JAMES STACK *vs.* NEW YORK, NEW HAVEN, AND HARTFORD RAILROAD COMPANY.

Hampshire.   September 24, 1900. — November 27, 1900.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Personal Injuries — Examination of Plaintiff by Physician, on Application of Defendant.*

At the trial of an action for personal injuries, the defendant, who denied the injuries, was permitted, two days before a second trial, to send two doctors who made a thorough examination of the plaintiff in company with the doctors employed by the plaintiff.   After the plaintiff had closed his case, and the defendant had called his two doctors as witnesses, he asked the judge to order the plaintiff to submit to an examination by another doctor named by him.   The plaintiff objected on the ground that his relations with that doctor were unfriendly, but offered to allow an examination by any other physician whom the defendant might select. The defendant declined the offer, and thereupon the judge refused to make the order, ruling that he had no power to make it " under these circumstances." The defendant then attempted to make evidence for himself by sending the doctor objected to by the plaintiff to the house of the latter to ask leave to examine him.   The plaintiff refused.   Evidence of the request and refusal, coupled with evidence that the doctor was a competent man, was excluded.   *Held,* that the defendant had no ground of exception.

TORT, for personal injuries. The defence was that the plaintiff's apparent condition of health at the time of the trial was not the result of his alleged injury, and that the symptoms were to a considerable extent magnified and were so called litigating symptoms. At the trial in the Superior Court, before *Hardy*, J., the jury returned a verdict for the plaintiff; and the defendant alleged exceptions, which appear in the opinion.

The case was submitted on briefs to all the justices.

*J. C. Hammond & H. P. Field*, for the defendant.

*W. H. Brooks & W. Hamilton*, for the plaintiff.

HOLMES, C. J. This is an action for personal injuries. The defendant denied the injuries, and, two days before a second trial, was permitted to send two doctors, who made a thorough examination of the plaintiff in company with the doctors employed by the plaintiff. After the plaintiff had closed his case and after the defendant had called its two doctors as witnesses, it asked the court to order the plaintiff to submit to an examination by another doctor named by it. The plaintiff objected, on the ground that his relations with that doctor were unfriendly, but offered to allow an examination by any other physician whom the defendant might select. The defendant declined the offer, and thereupon the court refused to make the order, ruling that it had no power or right to make it under the circumstances. The defendant excepted.

Perhaps the words "under the circumstances" so far cut down the seemingly absolute denial of power in the first part of the ruling that it meant only to state emphatically the plain injustice and outrage which it would have been to make the order proposed. Other language used has somewhat that look. The judge probably was justified in assuming the truth of the plaintiff's statement that his relations with the doctor were hostile. He certainly was justified in assuming that the plaintiff had personal objections to him. When the plaintiff coupled with his objection an offer to accept any other doctor whom the defendant might choose to send, bearing in mind the large possibilities that were open by telegraph and rail, he had a plain right to have his personality respected to the small extent that he asked. If that is all that the ruling meant, as it certainly was all that was needed to dispose of the matter, in our opinion it was right.

But if the ruling requires the decision of a broader question, we agree with the Supreme Court of the United States, the New York Court of Appeals, and some other able courts, that the power does not exist. *Union Pacific Railway* v. *Botsford,* 141 U. S. 250. *McQuigan* v. *Delaware, Lackawanna, & Western Railroad,* 129 N. Y. 50. *Pennsylvania Co.* v. *Newmeyer,* 129 Ind. 401. Many of the cases which have followed *Schroeder* v. *Chicago, Rock Island, & Pacific Railway,* 47 Iowa, 375, in asserting the opposite opinion are collected in *Graves* v. *Battle Creek,* 95 Mich. 266, 270. The need of the power easily may be exaggerated, because if, contrary to usual experience, a plaintiff should dare to refuse a reasonable examination, it would be the subject of just comment to the jury. But if the power should be deemed needful to a more perfect administration of justice, the remedy should be furnished by the Legislature, which as yet has not gone so far. The statutes compel the answer to interrogatories and the exhibition of documents under the penalty of a nonsuit or default. They also empower the court to order a view of a place in question, or of "any property, matter, or thing relating to the controversy between the parties." Pub. Sts. c. 170, § 43. But these words do not extend to the ordering of an interference with the person of a party by some one out of court, in order to enable him to qualify himself to be called as a witness by the opposing party if the latter sees fit.

We cannot doubt that as matter of history the power which we are asked to assert was of a kind rarely claimed or exercised by common law courts. It is said by Mr. Langdell that " the common law procedure is founded upon the theory that the parties to an action owe no obedience to the court." Langdell, Eq. Pl. (2d ed.) § 40. And although, of course, as recognized by the author, the statement must not be taken too absolutely, it indicates an important truth. It also is true, perhaps with some reservations, as observed by Mr. Justice Gray in the Supreme Court of the United States, that the common law was very slow to sanction any violation of or interference with the person of a free citizen. The few and obsolete specific cases in which the judges or a jury inspected the person of a party have little bearing on the court's power to order him to submit to inspection in order to qualify a witness.

If such a power existed in the practice which we inherit, it must have been enforced either by judgment in the cause or by process of contempt. We are not aware of any precedents which, apart from statute, would warrant a judge in nonsuiting a party who had made out a *prima facie* case on the ground that he refused to furnish evidence which might or might not overthrow it. As to the process for contempt, no doubt that is known to courts of common law, and we do not forget St. 1887, c. 383, § 3, whatever may be its scope. But the question remains, how far and under what circumstances the power to use that process has been exercised. The English cases cited by Mr. Justice Gray make it pretty clear that it was not exercised in a case like this by common law courts. *Newham* v. *Tate*, 1 Arnold, 244. *Turquand* v. *Strand Union*, 8 Dowl. 201. And, if that be material, we are not aware that the English Chancery ever has made such an order as was asked here.

We agree that, in view of the great increase of actions for personal injuries, it may be desirable that the courts should have the power in dispute. We appreciate the ease with which, if we were careless or ignorant of precedent, we might deem it enlightened to assume that power. We do not forget the continuous process of developing the law that goes on through the courts, in the form of deduction, or deny that in a clear case it might be possible even to break away from a line of decisions in favor of some rule generally admitted to be based upon a deeper insight into the present wants of society. But the improvements made by the courts are made, almost invariably, by very slow degrees and by very short steps. Their general duty is not to change but to work out the principles already sanctioned by the practice of the past. No one supposes that a judge is at liberty to decide with sole reference even to his strongest convictions of policy and right. His duty in general is to develop the principles which he finds, with such consistency as he may be able to attain. No one supposes that this court might have anticipated the Legislature by declaring parties to be competent witnesses, any more than to-day it could abolish the requirement of consideration for a simple contract. In the present case we perceive no such pressing need of our anticipating the Legislature as to justify our departure from what we cannot doubt is the settled tradition

of the common law to a point beyond that which we believe to have been reached by equity, and beyond any to which our statutes dealing with kindred subjects ever have seen fit to go. It will be seen that we put our decision not upon the impolicy of admitting such a power, but on the ground that it would be too great a step of judicial legislation to be justified by the necessities of the case.

After the judge had refused to order the plaintiff to submit to examination, the defendant attempted to make evidence for itself by sending the doctor objected to by the plaintiff to the house of the latter to ask leave to examine him. This, of course, the plaintiff refused. The defendant took a second exception to the exclusion of evidence of the request and refusal, coupled with evidence that the doctor was a competent man. So far as appears, the fact already was before the jury that the plaintiff declined to be examined by that doctor. Coupled with the plaintiff's offer it amounted to nothing as evidence against him, but it was in for what it was worth. No doubt, in general, a refusal to be examined by a proper doctor sent by the other side would be admissible in evidence, and would be a proper subject for severe comment and a ground for adverse inference, at the very least. *Freeport* v. *Isbell*, 93 Ill. 381. But not only was there no such refusal in the present case, but under the circumstances, after the matter had been disposed of by the court and the defendant and the jury knew of the plaintiff's objections, the defendant's request was merely an attempt to give them further prominence, and did not warrant an exception, because it was not allowed to be proved.

*Exceptions overruled.*