## SIBBACH *v.* WILSON & CO., INC.

No. 28.  Argued December 17, 1940.—Decided January 13, 1941.

Mr. *James A. Velde*, with whom *Messrs. Royal W. Irwin* and *Lambert Kaspers* were on the brief, for petitioner.

4

*Mr. J. F. Dammann,* with whom *Mr. K. F. Montgomery* was on the brief, for respondent.

6

*Mr. William D. Mitchell* filed a brief, as *amicus curiae,*

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This case calls for decision as to the validity of Rules 35 and 37 of the Rules of Civil Procedure for District Courts of the United States.[1]

In an action brought by the petitioner in the District Court for Northern Illinois to recover damages for bodily injuries, inflicted in Indiana, respondent answered denying the allegations of the complaint, and moved for an order requiring the petitioner to submit to a physical examination by one or more physicians appointed by the court to determine the nature and extent of her injuries. The court ordered that the petitioner submit to such an examination by a physician so appointed.

Compliance having been refused, the respondent obtained an order to show cause why the petitioner should

---

[1] 28 U. S. C., following § 723c.

not be punished for contempt. In response the peti-
tioner challenged the authority of the court to order her
to submit to the examination, asserting that the order
was void. It appeared that the courts of Indiana, the
state where the cause of action arose, hold such an order
proper,[2] whereas the courts of Illinois, the state in which
the trial court sat, hold that such an order cannot be
made.[3] Neither state has any statute governing the
matter.

The court adjudged the petitioner guilty of contempt;
and directed that she be committed until she should obey
the order for examination or otherwise should be legally
discharged from custody. The petitioner appealed.

The Circuit Court of Appeals decided that Rule 35,
which authorizes an order for a physical examination in
such a case, is valid, and affirmed the judgment.[4] The
writ of certiorari was granted because of the importance
of the question involved.

The Rules of Civil Procedure were promulgated under
the authority of the Act of June 19, 1934,[5] which is:

"Be it enacted . . . That the Supreme Court of the
United States shall have the power to prescribe, by gen-
eral rules, for the district courts of the United States and
for the courts of the District of Columbia, the forms of
process, writs, pleadings, and motions, and the practice
and procedure in civil actions at law. Said rules shall
neither abridge, enlarge, nor modify the substantive

---

[2] *South Bend* v. *Turner*, 156 Ind. 418; 60 N. E. 271; *Aspy* v. *Bot-
kins*, 160 Ind. 170; 66 N. E. 462; *Lake Erie & W. R. Co.* v. *Griswold*,
72 Ind. App. 265; 125 N. E. 783; *Valparaiso* v. *Kinney*, 75 Ind. App.
660; 131 N. E. 237.

[3] *Chicago* v. *McNally*, 227 Ill. 14; 81 N. E. 23; *Mattice* v. *Klawans*,
312 Ill. 299; 143 N. E. 866; *Illinois* v. *Scott*, 326 Ill. 327; 157 N. E.
247.

[4] 108 F. 2d 415.

[5] c. 651, 48 Stat. 1064; 28 U. S. C. § 723 b, c.

rights of any litigant. They shall take effect six months after their promulgation, and thereafter all laws in conflict therewith shall be of no further force or effect.

"Sec. 2. The court may at any time unite the general rules prescribed by it for cases in equity with those in actions at law so as to secure one form of civil action and procedure for both: *Provided, however,* That in such union of rules the right of trial by jury as at common law and declared by the seventh amendment to the Constitution shall be preserved to the parties inviolate. Such united rules shall not take effect until they shall have been reported to Congress by the Attorney General at the beginning of a regular session thereof and until after the close of such session."

The text of the relevant portions of Rules 35 and 37 is:

"Rule 35. Physical and Mental Examination of Persons.

"(a) Order for Examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

"Rule 37. Refusal to Make Discovery: Consequences.

"(a) Refusal to Answer. . . .

"(b) Failure to Comply With Order.

(1) *Contempt.* If a party or other witness refuses to be sworn or refuses to answer any question after being directed to do so by the court in the district in which the deposition is being taken, the refusal may be considered a contempt of that court.

(2) *Other Consequences.* If any party . . . refuses to obey . . . an order made under Rule 35 requiring him to submit to a physical or mental examination, the court may make such orders in regard to the refusal as are just, and among others the following:

(i) An order that . . . the physical or mental condition of the party, . . . shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(ii) An order . . . prohibiting [the disobedient party] from introducing . . . evidence of physical or mental condition;

(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

(iv) In lieu of any of the foregoing orders or in addition thereto, an order directing the arrest of any party or agent of a party for disobeying any of such orders except an order to submit to a physical or mental examination."

The contention of the petitioner, in final analysis, is that Rules 35 and 37 are not within the mandate of Congress to this court. This is the limit of permissible debate, since argument touching the broader questions of Congressional power and of the obligation of federal courts to apply the substantive law of a state is foreclosed.

Congress has undoubted power to regulate the practice and procedure of federal courts,[6] and may exercise that power by delegating to this or other federal courts authority to make rules not inconsistent with the statutes

---

[6] *Wayman* v. *Southard,* 10 Wheat. 1, 21; *Bank of the United States* v. *Halstead,* 10 Wheat. 51, 53; *Beers* v. *Haughton,* 9 Pet. 329, 359, 361.

or constitution of the United States; [7] but it has never essayed to declare the substantive state law, or to abolish or nullify a right recognized by the substantive law of the state where the cause of action arose, save where a right or duty is imposed in a field committed to Congress by the Constitution. On the contrary it has enacted that the state law shall be the rule of decision in the federal courts.[8]

Hence we conclude that the Act of June 19, 1934, was purposely restricted in its operation to matters of pleading and court practice and procedure. Its two provisos or caveats emphasize this restriction. The first is that the court shall not "abridge, enlarge, nor modify substantive rights," in the guise of regulating procedure. The second is that if the rules are to prescribe a single form of action for cases at law and suits in equity, the constitutional right to jury trial inherent in the former must be preserved. There are other limitations upon the authority to prescribe rules which might have been, but were not mentioned in the Act; for instance, the inability of a court, by rule, to extend or restrict the jurisdiction conferred by a statute.[9]

Whatever may be said as to the effect of the Conformity Act [10] while it remained in force, the rules, if they are within the authority granted by Congress, repeal that statute, and the District Court was not bound to follow the Illinois practice respecting an order for physical examination. On the other hand if the right to be exempt from such an order is one of substantive law, the Rules

---

[7] *Wayman* v. *Southard, supra,* 42; *Bank of the United States* v. *Halstead, supra,* 61; *Beers* v. *Haughton, supra,* 359.

[8] R. S. 721, 28 U. S. C. § 725.

[9] *Hudson* v. *Parker,* 156 U. S. 277, 284; *Venner* v. *Great Northern Ry. Co.,* 209 U. S. 24, 35; *Davidson Marble Co.* v. *Gibson,* 213 U. S. 10, 18; *Meek* v. *Centre County Banking Co.,* 268 U. S. 426, 434.

[10] R. S. 914; 28 U. S. C. § 724.

of Decision Act [11] required the District Court, though sitting in Illinois, to apply the law of Indiana, the state where the cause of action arose, and to order the examination. To avoid this dilemma the petitioner admits, and, we think, correctly, that Rules 35 and 37 are rules of procedure. She insists, nevertheless, that by the prohibition against abridging substantive rights, Congress has banned the rules here challenged. In order to reach this result she translates "substantive" into "important" or "substantial" rights. And she urges that if a rule affects such a right, albeit the rule is one of procedure merely, its prescription is not within the statutory grant of power embodied in the Act of June 19, 1934. She contends that our decisions and recognized principles require us so to hold.

The petitioner relies upon *Union Pacific Ry. Co.* v. *Botsford,* 141 U. S. 250, and *Camden & Suburban Ry. Co.* v. *Stetson,* 177 U. S. 172. But these cases in reality sustain the validity of the rules. In the *Botsford* case an action to recover for a personal injury suffered in the territory of Utah [12] was instituted in the United States Circuit Court for Indiana, which refused to order a physical examination. This court affirmed, on the ground that no authority for such an order was shown. There was no suggestion that the question was one of substantive law. The court first examines the practice at common law and finds that it never recognized such an order. Then, acknowledging that a statute of the United States authorizing an order of the sort would be valid, the opinion finds there is none. Thus the matter is treated as one of procedure, for Congress has not, if it could, declared by statute the substantive law of a state. After

[11] *Supra,* note 8.

[12] The opinion does not so state, but the record filed in this court so shows.

12

stating that the decision law of Indiana on the subject appeared not to be settled, and that a cited statute of that State was not in point, the court added that the question was not one of the law of Indiana but of the law of the United States and that the federal statutes by their provisions as to proof in actions at law precluded the application of the Conformity Act. Again, therefore, the opinion recognized that the matter is one of procedure, for both the cited federal statutes, concerning the mode of proof in federal courts, and the Conformity Act, deal solely with procedure.

In fine, the decision was only that the making of such an order is regulable by statute, that the federal statutes forbade it, and hence the Conformity Act could not be thought to authorize the practice by reference to and incorporation of state law.

In the *Stetson* case the action was brought in the District Court for New Jersey by a citizen of Pennsylvania, who, while a citizen of New Jersey, had been injured in the latter state. A statute of New Jersey authorized the state courts to order a physical examination of a plaintiff in an action for damages pending therein. The District Court refused to order such an examination on the ground that it lacked power so to do. After a verdict and judgment for plaintiff the defendant appealed to the Circuit Court of Appeals, assigning the refusal as error. That court certified the question, and this court answered that the District Court had power to order the examination.

The court stated that in the *Botsford* case there was no statute authorizing such an order, but said that here there was a state statute which by the Rules of Decision Act was made a law of the United States and must be given effect in a trial in a federal court. While it is true the court referred to the Rules of Decision Act (R. S. 721) and not to the Conformity Act (R. S. 914) the

entire discussion goes upon the assumption that the matter is procedural. In any event, the distinction between substantive and procedural law was immaterial, for the cause of action arose and the trial was had in New Jersey.[13]

In the instant case we have a rule which, if within the power delegated to this court, has the force of a federal statute, and neither the *Botsford* nor the *Stetson* case is authority for ignoring it.

The remaining case on which petitioner leans is *Stack* v. *New York, N. H. & H. R. Co.*, 177 Mass. 155; 58 N. E. 686, where the court agreed with the view expressed in the *Botsford* case that common-law practice did not warrant the entry of such an order and said it was for the legislature rather than the courts to alter the practice. But if Rule 35 is within the authority granted, the federal legislature sanctioned it as controlling all district courts.

We are thrown back, then, to the arguments drawn from the language of the Act of June 19, 1934. Is the phrase "substantive rights" confined to rights conferred by law to be protected and enforced in accordance with the adjective law of judicial procedure? It certainly embraces such rights. One of them is the right not to be injured in one's person by another's negligence, to redress infraction of which the present action was brought. The petitioner says the phrase connotes more; that by its use Congress intended that in regulating procedure this court should not deal with important and substantial rights theretofore recognized. Recognized where and by whom? The state courts are divided as to the power in the absence of statute to order a physical examination.[14] In a number such an order is author-

---

[13] As above pointed out, if the matter is one of substantive law, R. S. 721 requires the application of the law of Indiana, which authorizes an order for examination.

[14] See Wigmore on Evidence (3d Ed.) § 2220, note 13.

ized by statute or rule.[15]   The rules in question accord with the procedure now in force in Canada and England.[16]

The asserted right, moreover, is no more important than many others enjoyed by litigants in District Courts sitting in the several states, before the Federal Rules of Civil Procedure altered and abolished old rights or privileges and created new ones in connection with the conduct of litigation.   The suggestion that the rule offends the important right to freedom from invasion of the person ignores the fact that, as we hold, no invasion of freedom from personal restraint attaches to refusal so to comply with its provisions.   If we were to adopt the suggested criterion of the importance of the alleged right we should invite endless litigation and confusion worse confounded.   The test must be whether a rule really regulates procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them.   That the rules in question are such is admitted.

Finally, it is urged that Rules 35 and 37 work a major change of policy and that this was not intended by Congress.   Apart from the fact already stated, that the policy of the states in this respect has not been uniform, it is to be noted that the authorization of a comprehensive system of court rules was a departure in policy, and that the new policy envisaged in the enabling act of 1934 was that the whole field of court procedure be regulated in the interest of speedy, fair and exact determination of the truth.   The challenged rules comport with this policy. Moreover, in accordance with the Act, the rules were sub-

---

[15] See Notes to the Rules of Civil Procedure, printed by the Advisory Committee March 1938, p. 32.

[16] Wigmore on Evidence (3d Ed.) § 2220, note 13; 31 & 32 Vict. c. 119, § 26.

mitted to the Congress so that that body might examine them and veto their going into effect if contrary to the policy of the legislature.

The value of the reservation of the power to examine proposed rules, laws and regulations before they become effective is well understood by Congress. It is frequently, as here, employed to make sure that the action under the delegation squares with the Congressional purpose.[17] Evidently the Congress felt the rule was within the ambit of the statute as no effort was made to eliminate it from the proposed body of rules, although this specific rule was attacked and defended before the committees of the two Houses.[18] The Preliminary Draft of the rules called attention to the contrary practice indicated by the *Botsford* case, as did the Report of the Advisory Committee and the Notes prepared by the Com-

---

[17] An analogy is found in the organic acts applicable to some of the territories, before their admission to statehood, which provided that laws passed by the territorial legislature should be valid unless Congress disapproved. § 5 of the Ordinance of 1787; see *Pease* v. *Peck*, 18 How. 595. Territory of Florida, § 5 of the Act of March 30, 1822 (3 Stat. 655); territory of Louisiana, § 4 of the Act of March 26, 1804 (2 Stat. 284), and § 3 of the Act of March 3, 1805 (2 Stat. 331); territory of Minnesota, § 6 of the Act of March 3, 1849 (9 Stat. 405); territory of New Mexico, § 7 of the Act of September 9, 1850 (9 Stat. 449); territory of Oregon, § 6 of the Act of August 14, 1848 (9 Stat. 326); territory of Utah, § 6 of the Act of September 9, 1850 (9 Stat. 455); territory of Washington, § 6 of the Act of March 2, 1853 (10 Stat. 175); territory of Wisconsin, § 6 of the Act of April 20, 1836 (5 Stat. 13). Similar provisions are now applicable to Alaska, Puerto Rico, the Virgin Islands and the Philippines. 48 U. S. C. §§ 90, 826, 1405(o), 1054.

Cf. the provisions for lying over before Congress in § 407 of the Act of March 3, 1933 (47 Stat. 1519), and § 5 of the Reorganization Act of 1939 (53 Stat. 562).

[18] Hearings before the Committee on the Judiciary, House of Representatives, 75th Cong., 3rd Sess., pp. 117, 141; Hearings before a Subcommittee of the Committee on the Judiciary, U. S. Senate, 75th Cong., 3rd Sess., pp. 36–37, 39, 51.

mittee to accompany the final version of the rules.[19] That no adverse action was taken by Congress indicates, at least, that no transgression of legislative policy was found. We conclude that the rules under attack are within the authority granted.

The District Court treated the refusal to comply with its order as a contempt and committed the petitioner therefor. Neither in the Circuit Court of Appeals nor here was this action assigned as error. We think, however, that in the light of the provisions of Rule 37 it was plain error of such a fundamental nature that we should notice it.[20] Section (b) (2) (iv) of Rule 37 exempts from punishment as for contempt the refusal to obey an order that a party submit to a physical or mental examination. The District Court was in error in going counter to this express exemption. The remedies available under the rule in such a case are those enumerated in § (b) (2) (i) (ii) and (iii). For this error we reverse the judgment and remand the cause to the District Court for further proceedings in conformity to this opinion.

*Reversed.*

MR. JUSTICE FRANKFURTER, dissenting:

*Union Pacific Ry. Co.* v. *Botsford,* 141 U. S. 250, denied the power of the federal courts in a civil action to compel a plaintiff suing for injury to the person to submit to a physical examination. Nine years later, in *Camden & Suburban Ry. Co.* v. *Stetson,* 177 U. S. 172,

---

[19] Preliminary Draft (May, 1936) of Rules of Civil Procedure for the District Courts of the United States and the Supreme Court of the District of Columbia, Advisory Committee on Rules for Civil Procedure, p. 71; Notes to the Rules of Civil Procedure for the District Courts of the United States (March, 1938), p. 32.

[20] Supreme Court Rule 27, par. 6; *Mahler* v. *Eby,* 264 U. S. 32, 45; *Kessler* v. *Strecker,* 307 U. S. 22, 34.

the *Botsford* decision was treated as settled doctrine. The present issue is whether the authority which Congress gave to this Court to formulate rules of civil procedure for the district courts allows displacement of the law of the *Botsford* case. Stated more particularly, is Rule 35, authorizing such physical examination, valid under the Rules Enabling Act of June 19, 1934; 48 Stat. 1064; 28 U. S. C. § 723b-c. It is urged that since this Rule pertains to procedure, it is valid because outside the limitations of that Act, whereby "said rules shall neither abridge, enlarge, nor modify the substantive rights of any litigant."

Speaking with diffidence in support of a view which has not commended itself to the Court, it does not seem to me that the answer to our question is to be found by an analytic determination whether the power of examination here claimed is a matter of procedure or a matter of substance, even assuming that the two are mutually exclusive categories with easily ascertainable contents. The problem seems to me to be controlled by the policy underlying the *Botsford* decision. Its doctrine was not a survival of an outworn technicality. It rested on considerations akin to what is familiarly known in the English law as the liberties of the subject. To be sure, the immunity that was recognized in the *Botsford* case has no constitutional sanction. It is amenable to statutory change. But the "inviolability of a person" was deemed to have such historic roots in Anglo-American law that it was not to be curtailed "unless by clear and unquestionable authority of law." In this connection it is significant that a judge as responsive to procedural needs as was Mr. Justice Holmes, should, on behalf of the Supreme Judicial Court of Massachusetts, have supported the *Botsford* doctrine on the ground that "the common law was very slow to sanction any viola-

tion of or interference with the person of a free citizen."
*Stack* v. *New York, N. H. & H. R. Co.*, 177 Mass. 155,
157; 58 N. E. 686.

So far as national law is concerned, a drastic change in
public policy in a matter deeply touching the sensibilities
of people or even their prejudices as to privacy, ought
not to be inferred from a general authorization to formu-
late rules for the more uniform and effective dispatch of
business on the civil side of the federal courts. I deem
a requirement as to the invasion of the person to stand
on a very different footing from questions pertaining to
the discovery of documents, pre-trial procedure and other
devices for the expeditious, economic and fair conduct
of litigation. That disobedience of an order under Rule
35 cannot be visited with punishment as for contempt
does not mitigate its intrusion into an historic immunity
of the privacy of the person. Of course the Rule is com-
pulsive in that the doors of the federal courts otherwise
open may be shut to litigants who do not submit to such
a physical examination.

In this view little significance attaches to the fact that
the Rules, in accordance with the statute, remained on
the table of two Houses of Congress without evoking any
objection to Rule 35 and thereby automatically came
into force. Plainly the Rules are not acts of Congress
and can not be treated as such. Having due regard to
the mechanics of legislation and the practical conditions
surrounding the business of Congress when the Rules
were submitted, to draw any inference of tacit approval
from non-action by Congress is to appeal to unreality.
And so I conclude that to make the drastic change that
Rule 35 sought to introduce would require explicit
legislation.

Ordinarily, disagreement with the majority on so-called
procedural matters is best held in silence. Even in the
present situation I should be loath to register dissent did

the issue pertain merely to diversity litigation. But Rule 35 applies to all civil litigation in the federal courts, and thus concerns the enforcement of federal rights and not merely of state law in the federal courts.

MR. JUSTICE BLACK, MR. JUSTICE DOUGLAS and MR. JUSTICE MURPHY agree with these views.