UNITED STATES of America, Plaintiff,

v.

James Russell KNOX, Defendant.

No. CR88–11D.

United States District Court,
W.D. Washington.

April 21, 1988.

Robert H. Westinghouse, Asst. U.S. Atty., Seattle, Wash., for U.S.

Michael P. Ruark, Seattle, Wash., for defendant.

## MEMORANDUM & ORDER

DIMMICK, District Judge.

Defendant has moved this Court for an order declaring unconstitutional the Sentencing Guidelines promulgated by the United States Sentencing Commission. The Court has reviewed the parties' memoranda, and has heard oral argument from representatives of the Justice Department, the Sentencing Commission, and the Federal Public Defender. This Court recognizes that written opinions on the constitutionality of the Sentencing Guidelines are already numerous. This Memorandum and Order emphasizes this Court's view that the fundamental policies underlying the separation of powers doctrine are not threatened by the Guidelines or by the composition of the Sentencing Commission. For the reasons set forth below defendant's motion is denied.

## BACKGROUND

The Sentencing Reform Act of 1984, codified at 28 U.S.C. §§ 991–998 (Supp. III 1985) established a Sentencing Commission. The Commission's principle task was to

promulgate guidelines for use by federal courts in criminal sentencing. 28 U.S.C. § 994(a).[1] The reason for developing guidelines was to cure sentence disparities. The guidelines were not developed in a vacuum. The Commission was required to incorporate into the guidelines specific congressional policy objectives.[2]

Although the Commission is designated as an independent agency in the judicial branch, its members are appointed to six-year terms by the President, upon advice and consent of the Senate.[3] 28 U.S.C. §§ 991(a), 992(a). At least three of its members shall be federal judges. 28 U.S.C. § 991(a).

Defendant challenges the guidelines on grounds that Congress improperly delegated its legislative authority to the Commission. Defendant further contends that the separation of powers doctrine is violated by the involvement of judges in nonjudicial activity, and by the President's power to remove Commission members.

## ANALYSIS

### I. NON-DELEGATION

■ Article I of the Constitution assigns to Congress the task of legislating. Defendant contends Congress improperly delegated that function by directing the Commission to prescribe sentences for all federal crimes. In particular, defendant contends certain "core functions" of Congress are non-delegable or, alternatively, that Congress failed to lay out "intelligible principles" to guide the Commission.

With respect to this issue, this Court adopts the reasoning and conclusion of Judge Enright in *United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal. 1988). Judge Enright concluded that there is inadequate authority upon which to base a "core function" analysis, and that Congress provided the Commission with ample guidance. *Id.* at 1417, 1418. This Court agrees and therefore rejects defendant's assertion that Congress unconstitutionally delegated its legislative power.

### II. SEPARATION OF POWERS

The separation of powers doctrine is implied from the Constitution's allocation of power among the three independent branches of government. Such an allocation, it was thought, protects against the tyranny that would result from unchecked power in the hands of one branch.[4] The separation, however, is not absolute. The branches of government are not hermetically sealed from one another. *Buckley v. Valeo*, 424 U.S. 1, 121, 96 S.Ct. 612, 683, 46 L.Ed.2d 659 (1976). "[T]he Constitution ... contemplates that practice will integrate the dispersed powers into a workable government. It enjoins upon its branches separateness but interdependence, autono-

---

1. Under 28 U.S.C. § 994, the Commission is assigned many other duties. The Commission is to issue policy statements explaining application of the guidelines, monitor and report on compliance by sentencing courts, consider petitions for modification, research improvements in sentencing procedures, and conduct periodic training programs.

2. Among other things, the Commission was to eliminate sentencing disparities, allow for mitigating or aggravating circumstances, use a two-dimensional matrix intersecting categories of offenses and defendants, consider or disregard certain factors in establishing the categories, use current average sentences as a starting point, favor those defendants who substantially assist a criminal investigation, and recognize certain congressional preferences and standards of culpability in developing the sentencing guidelines. 28 U.S.C. §§ 991, 994.

3. Before appointing voting members to the Commission, the President shall first consult representatives of judges, prosecutors, defense attorneys, law enforcement officials, senior citizens, crime victims, and other interested groups. 28 U.S.C. § 991(a). Judges shall be appointed after considering a list of candidates recommended by the Judicial Conference of the United States. *Id.* Not more than four members of the Commission shall be members of the same political party. *Id.*

4. "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 57, 102 S.Ct. 2858, 2864, 73 L.Ed.2d 785 (1982), quoting The Federalist No. 47, at 300 (H. Lodge ed. 1888) (J. Madison).

my but reciprocity." *Youngstown Sheet & Tube Co. v. Sawyer,* 343 U.S. 579, 635, 72 S.Ct. 863, 870, 96 L.Ed. 1153 (1952) (J. Jackson, concurring).

■ In deciding whether a statutory scheme comports with the balance originally struck by the Framers, courts inquire whether the scheme expands the power of a particular branch or, on the other hand, functionally impairs the ability of that branch to perform its constitutional duties. This Court begins that inquiry with the presumption that the Sentencing Reform Act and the Sentencing Guidelines are constitutional. *INS v. Chadha,* 462 U.S. 919, 944, 103 S.Ct. 2764, 2780, 77 L.Ed.2d 317 (1983).[5]

A. *Has Congress Unconstitutionally Expanded the Function of the Judiciary?*

■ Defendant contends that Congress unconstitutionally expanded the judiciary's power by mandating participation by three federal judges in the non-judicial work of the Commission. This argument lacks merit for two reasons.

First, Congress did not expand the power of the judiciary. If anything, congress restricted the power of the judiciary by removing the tremendous discretion previously allowed each federal judge in assigning sentences within the maximum ranges established by Congress. In place of that discretion, Congress substituted the participation of three judges on the Sentencing Commission. Congress gave the Commission specific policy objectives, and reserved the power to invalidate the Commission's guidelines.[6]

Second, this case is much different from the landmark *Hayburn's Case* in which the expansion of power test was first enunciated. 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792). At issue was a congressional enactment authorizing federal judges to settle pension claims. The Court, expressing its opinion via letters to the President, held that the attempt by Congress to impose administrative duties on judges was unconstitutional. *Id.* at 409–11.

*Hayburn* is clearly distinguishable. It concerned an attempt to involve the entire federal judiciary in a purely executive task. Here, three judges are involved in duties that blend the interests and functions of all three governmental branches. Further, the task at issue in *Hayburn* was completely detached from customary judicial duties. Here, the Commission was assigned a task which previously had been left almost entirely in the lap of the judiciary. The Commission's work, while not purely judicial in nature, is clearly related to the function of the judiciary. *See United States v. Ruiz–Villanueva,* 680 F.Supp. 1411, 1420 (S.D. Cal.1988).[7]

---

5. Defendant has not raised the issue whether placement of the Commission in the judicial branch violates the separation of powers principle. Nevertheless, this Court has reviewed the opinions of other courts and agrees with those finding that the Commission's placement in the judicial branch is not a constitutional flaw.

6. One might argue that Congress' power to invalidate the guidelines is meaningless because Congress was not likely to exercise such power and, in fact, did not exercise it. The Supreme Court has stated, "[L]egislation should not be enacted unless it has been carefully and fully considered by the Nation's elected officials." *INS v. Chadha,* 462 U.S. 919, 948, 103 S.Ct. 2764, 2783, 77 L.Ed.2d 317 (1983), citing U.S. Const. art. I, §§ 1, 7.

   Nevertheless, this Court cannot conclude that the judiciary's power was unconstitutionally expanded by the silent acquiescence of Congress. As previously noted, Congress has for many years silently acquiesced in the broad discretion enjoyed by federal courts in sentencing. The fact that the guidelines took effect through congressional silence should not be construed to mean that Congress was in fact silent. Congress closely guided the Commission's work with extensive directives set forth in the Act. See *supra,* note 2. Further, Congress had six months in which to review and revise the guidelines. 28 U.S.C. § 994(p).

7. One might argue that Congress impermissibly expanded the judiciary's power by granting it authority to issue substantive, rather than procedural, guidelines. However, the substantive effect of the Sentencing Guidelines is no greater than that of the discretion previously allowed individual judges. Also, it is not clear that the judiciary's non-judicial functions are limited to issuing procedural rules. The Supreme Court has emphasized that the ability of Congress to confer rulemaking authority on the judiciary is limited to procedural matters. *Sibbach v. Wilson & Co.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479

**B.** *Has the Requirement that Three Judges be Members of the Sentencing Commission Functionally Impaired the Judiciary?*

█ Defendant contends that assignment of judges to non-Article III duties has the potential to impair the judiciary from performing its constitutional function. In order to decide cases and controversies judges must be impartial and independent. This is impossible, defendant argues, because judge/commissioners would be biased in favor of law enforcement efforts, because judges would be biased in favor of viewpoints expressed by a colleague on the Commission, and because the judiciary as a whole would necessarily lose some independence as a result of the entanglement between the judiciary and the executive branch.

The first of defendant's concerns is without merit. Defendant relies on the Eleventh Circuit's decision addressing the voluntary participation of two judges on the President's Organized Crime Commission. *In re Application of the President's Commission on Organized Crime, Subpoena of Lorenzo Scaduto,* 763 F.2d 1191 (11th Cir.1985).[8] The Court concluded that "a judge who is charged with assisting and improving enforcement efforts against organized crime must adopt a pro-government perspective which is ill-suited to his obligation to be neutral in the courtroom." *Id.* at 1197. However, service on the Sentencing Commission presents far less risk of bias than service on the Organized Crime Commission. The latter commission is empowered to investigate organized crime and issue subpoenas. The Sentencing Commission, on the other hand, compiles statistics and recommends to Congress guidelines that limit the ability of judges to inject bias into sentencing proceedings. In short, there is nothing in the character of the Sentencing Commission's duties that brands participating judges as either "pro-prosecution" or "pro-defendant."

Defendant's argument concerning the tendency of judges to defer to their colleagues on the Commission is also without merit. As one court stated, "It is no secret that judges disagree with each other constantly. In construing or applying the guidelines, federal judges are unlikely to be impressed, or even minimally affected, by the fact that other judges serve on the Sentencing Commission." *United States v. Chambless,* 680 F.Supp. 793, 800 (E.D.La. 1988).

Defendant's final argument, that the judiciary will lose its independence by this entanglement with the executive branch, presents a more troublesome issue. As earlier noted, judges had near autonomy in sentencing criminals. The transfer of that power to a hybrid commission necessarily reduced the judiciary's independence and, at the same time, established an unprecedented intermingling of the judicial and executive branches. The issue is whether the judiciary's ability to complete its Article III duties is functionally impaired by its

---

(1940); *Wayman v. Southard,* 23 U.S. (10 Wheat.) 1, 6 L.Ed. 253 (1825). However, those decisions do not proscribe judges from serving on a Commission whose task is closely guided by Congress, and whose work product has little substantive difference from prior sentencing practice.

**8.** Defendant also finds support in the Third Circuit's opinion in *In re Application of President's Commission on Organized Crime, Subpoena of Scarfo,* 783 F.2d 370 (3d Cir.1986). There, the court found that the service of two judges on the President's Organized Crime Commission did not functionally impair the judiciary. *Id.* at 381. However, the court emphasized that the judges' service was voluntary, and identified the Sentencing Commission as an example of mandatory judicial service. *Id.* at 376 n. 3. Defend-

ant argues that, since three judges *must* serve on the Sentencing Commission, a finding of unconstitutionality would comport with the distinction raised in *Scarfo.* This Court disagrees. Whether service on the Commission is voluntary or involuntary is irrelevant to whether the judge will be so infected with bias as to be functionally impaired from performing Article III duties. Further, the Third Circuit's reference to the Sentencing Commission was isolated *dictum.* It does not support the proposition that extra-judicial activities are unconstitutional for the sole reason that they are mandatory. Finally, it is inaccurate to describe service on the Sentencing Commission as mandatory. Judges are free to remove themselves from consideration by the Judicial Council and to refuse an appointment to the Commission.

entanglement with the executive branch. This Court concludes that it is not.

First, the sentencing function is legislative. *Rummel v. Estelle*, 445 U.S. 263, 283–84, 100 S.Ct. 1133, 1144, 63 L.Ed.2d 382 (1980); *Ex Parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 74, 61 L.Ed. 129 (1916). The reduction of judges' discretion in sentencing does not functionally impair their performance of Article III duties, because sentencing was not an inherently judicial function to begin with. Second, defendant offers no reasoned support for his contention that the coupling of executive and judicial power causes an "untenable" threat to judicial independence. Defendant decries the permanent working relationship established between the two branches, and the fact that judge/commissioners will simultaneously wear executive and judicial hats. However, defendant does not explain how this arrangement creates the sort of unchecked power that the separation of powers principle was designed to avoid.[9] Finally, defendant argues that the judiciary's entanglement with executive power could impair its functioning by creating an appearance of partiality that would cause it to lose public trust and respect. However, the guidelines may increase public confidence by removing the disparity that infected the old sentencing process. Also, as the Government observes, the public might lack confidence in the Commission's impartiality if judges were excluded from participation.

C. *Does the President's Removal Power Violate the Separation of Powers Doctrine?*

█ The President has the power to remove members of the Commission. 28 U.S. C. § 991(a). Defendant argues that the executive's power to remove members of a commission located in the judiciary violates

the separation of powers doctrine. Defendant relies on *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986), wherein the Supreme Court found unconstitutional a provision enabling Congress to remove an executive officer.

Defendant's argument is premised on the assumption that the Commission is legislative. However, the Commission's functions are mixed. It is quasi-legislative, because it produces guidelines that become substantive law, absent objections from Congress. The Commission may be described as quasi-executive because its members are appointed by the President, and because it is assigned numerous advisory and oversight functions. The fact that the guidelines are to assist judges in sentencing has caused some to label the Commission quasi-judicial.

The problem with defendant's argument is that it could be advanced with equal force whether the removal power is vested in the President, in Congress, or in the Supreme Court. That is, one can protest the removal powers vested in one branch by simply characterizing the Commission as belonging to either of the other branches. However, the Commission's functions defy categorization as "legislative," "executive," or "judicial." Since the President is vested with power to remove members of a hybrid commission, rather than members of a distinctly nonexecutive body, this Court concludes that such removal power does not violate the separation of powers principle.[10]

CONCLUSION

The fundamental issue is whether the statutory scheme represents tolerable interdependence between the branches of government, or an aggregation of power that the Framers sought to avoid by creating a tripartite government. The fact that

---

9. In fact, there are numerous checks on the Commission's power. Its members must be approved by the Senate, judicial appointees must be nominated by the Judicial Council, the Commission must observe the specific policies and directives set forth by Congress, its recommendations may be rejected by Congress, and Congress is free to amend any sentencing law.

10. *Bowsher* holds only that Congress may not control the executive branch by reserving the power to remove executive officers. 106 S.Ct. at 3188. It does not stand for the proposition that it is unconstitutional to grant the President removal power over members of a hybrid commission.

the working relationship established in the Commission is unprecedented does not make its work unconstitutional. Neither the Commission, nor any single branch of government, wielded unchecked power in promulgating the guidelines. The Commission's unique composition and functions represent the sort of interdependence among the branches of government that need not be discouraged by rigid application of the separation of powers doctrine.[11]

THEREFORE, defendant's motion for an order declaring the Sentencing Guidelines unconstitutional is DENIED.

The Clerk of the Court shall direct copies of this Memorandum & Order to all counsel of record.

11. Defendant also contends that the Sentencing Reform Act violates the Compensation Clause, Article III, § 1. Commissioners are paid a salary at the rate which Court of Appeals judges are compensated. 28 U.S.C. § 992(c). Defendant observes that, if a district court judge is appointed to the Commission, he or she can be fired from the Commission and returned to the district court salary level, in retaliation for a judicial ruling that is unsuitable to the President. However, Article III, § 1 guarantees only that district court judges shall receive a district court salary. It does not protect judges from a reduction in salaries paid them for extra-judicial activities. Since the Act does not threaten the district court judge's salary, it does not violate the Compensation Clause.

Defendant further argues that the Act violates his constitutional right to adjudication by an Article III tribunal by authorizing the Sentencing Commission to modify the guidelines upon petition by a defendant. This argument also lacks merit. Defendant does not contend that this particular right was violated by the Commission's original promulgation of the guidelines. If the creation of the guidelines did not violate defendant's constitutional right to an Article III tribunal, this Court cannot conclude that that right is violated by procedures to modify the guidelines. Further, 28 U.S.C. § 994(s) does not allow the Commission to adjudicate specific claims. As one court observed, section 994(s) permits the Commission to modify the guidelines, which then must be reapplied by the sentencing judge. *Ruiz–Villanueva*, 680 F.Supp. at 1425, n. 8.