# Severability of Legislative Veto Provision

A legislative veto provision in the Selective Service Act, which would authorize either House of Congress to disapprove contracts in excess of $25,000,000, is unconstitutional under *Immigration and Naturalization Service v. Chadha*, but is severable from the rest of the statute.

This unconstitutional provision must be severed from the statute in its entirety, including its language calling for notification to Congress of proposed contracts.

February 28, 1991

MEMORANDUM OPINION FOR THE ACTING GENERAL COUNSEL
FEDERAL EMERGENCY MANAGEMENT AGENCY

This responds to your request for the opinion of this Office concerning the severability of an unconstitutional legislative veto provision in section 18(a) of the Selective Service Act of 1948, 50 U.S.C. app. § 468(a). The statute authorizes the President to secure expedited delivery of materials procured for the military forces of the United States. It also contains a provision added in 1973 that would enable one House of Congress to disapprove contracts of more than twenty-five million dollars. We conclude that the unconstitutional legislative veto is severable from the statute's grant of authority to the President to obtain expedited delivery of military contracts. We further conclude that the better view, under the unsettled authority, is that the portion of the statute added by the 1973 amendment constitutes the provision that must be severed from the statute.

## I.

Section 18(a) of the Selective Service Act of 1948 provides:

> Whenever the President after consultation with and receiving advice from the National Security Resources Board determines that it is in the interest of the national security for the Government to obtain prompt delivery of any articles or materials the procurement of which has been authorized by the Congress exclusively for the use of the armed forces of

49

the United States, or for the use of the Atomic Energy Commission, he is authorized, through the head of any Government agency, to place with any person operating a plant, mine, or other facility capable of producing such articles or materials an order for such quantity of such articles or materials as the President deems appropriate, except that no order which requires payments thereunder in excess of $25,000,000 shall be placed with any person unless the Committees on Armed Services of the Senate and the House of Representatives have been notified in writing of such proposed order and 60 days of continuous session of Congress have expired following the date on which such notice was transmitted to such Committees and neither House of Congress has adopted, within such 60-day period, a resolution disapproving such order.

50 U.S.C. app. § 468(a). Section 18(b) of the Act directs contractors to give precedence to orders placed pursuant to the statute. 50 U.S.C. app. § 468(a). The statute did not contain a legislative veto as originally enacted. Congress added the clause in section 18(a) that begins "except that no order" in 1973. *See* Department of Defense Appropriation Authorization Act, 1974, Pub. L. No. 93-155, § 807(d)(1), 87 Stat. 605, 616 (1973).

## II.

The provision authorizing one House of Congress to disapprove an order of more than twenty-five million dollars is unconstitutional. *Immigration and Naturalization Service v. Chadha*, 462 U.S. 919 (1983). *Chadha* states that congressional "action that ha[s] the purpose and effect of altering the legal rights, duties, and relations of persons . . . outside the Legislative Branch," *id.* at 952, must comply with the constitutional requirements of passage by both Houses of Congress and presentment to the President for approval or veto. U.S. Const. art. I, §§ 1, 7. The resolution of disapproval authorized by the 1973 addition to section 18(a) authorizes one House of Congress to limit the President's legal powers. The congressional disapproval mechanism, therefore, may not constitutionally be employed.

## III.

### A.

The next question is whether the legislative veto may be severed from the remaining provisions of the statute that grant the President authority to order articles and materials on an expedited basis. The Supreme Court has decided the severability of a legislative veto provision on two occasions. *See*

*Alaska Airlines, Inc. v. Brock*, 480 U.S. 678 (1987); *Chadha*, 462 U.S. at 931-35. Both cases employ the standard test for severability questions: "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines*, 480 U.S. at 684; *Chadha*, 462 U.S. at 931-32.[1] Writing with specific reference to legislative vetoes, the Court in *Alaska Airlines* emphasized that "[t]he more relevant inquiry in evaluating severability is whether the statute will function in a *manner* consistent with the intent of Congress." 480 U.S. at 685. Additionally, unconstitutional provisions are presumed to be severable from the remainder of a statute. *See Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984) (plurality opinion). Finally, unconstitutional provisions are further presumed to be severable if they are contained in a statute that includes a severability clause. *See, e.g., Alaska Airlines*, 480 U.S. at 686; *Chadha*, 462 U.S. at 932. The absence of such a clause, however, does not give rise to a presumption against severability. *See Alaska Airlines*, 480 U.S. at 686.[2]

The grant of authority to the President in section 18(a) would remain fully operative as a law if the congressional disapproval language is excised. The language authorizing the President to order materials needed for national security was part of the statute as originally enacted in 1948. It was fully operational in its original form. The congressional disapproval mechanism was added by Congress in 1973 to provide congressional review of a Presidential decision to place orders over $25,000,000. As the Court explained in *Alaska Airlines*, provisions of this sort are by their "very nature . . . separate from the operation of the substantive provisions of a statute," and do not affect the capacity of the balance of the legislation to function independently. 480 U.S. at 684-85.

Next, the law that results when the legislative veto provision is severed is not one that Congress would not have enacted. *See Alaska Airlines*, 480 U.S. at 685 (severance improper where it would produce a statute that Congress would not have accepted). Of course, "the absence of the veto necessarily alters the balance of powers between the Legislative and Executive Branches of the Federal Government," *Alaska Airlines* 480 U.S. at 685, but that is not enough to preclude severance. Rather, the appropriate inquiry is whether the delegation to the President of the power to enter into these military contracts is "so controversial or so broad that Congress would have been unwilling to make the delegation without a strong oversight mechanism." *Id.*

There is no reason to believe that Congress would have refused to grant this power. Congress made such a grant in 1948, and added the legislative veto provision only in 1973. In this case, then, the proper question is whether in 1973 Congress would have repealed the 1948 law if it had known that the

---

[1] This is the Court's longstanding test for severability. *See Champlin Refining Co. v. Corporation Comm'n*, 286 U.S 210, 234 (1932).

[2] Neither the 1948 act nor the 1973 amendments include a severability clause.

legislative veto provision was impermissible. We are aware of no indication that Congress would have taken such a step, and the legislative history of the 1973 amendment strongly suggests that it would have done no such thing. Congress added the legislative veto to the statute in 1973 as one of a group of amendments to four statutes giving the President emergency powers in an attempt to "reassert congressional control over backdoor financing of defense contractors." 119 Cong. Rec. 30,873 (1973) (statement of Sen. Proxmire). The initial Senate version of the 1973 amendment would have provided that no order over twenty-million dollars could be placed "except with the prior approval of the Congress." *Id.* at 30,872. The Conference Committee changed this and the other three provisions because "[w]hile the House conferees were sympathetic to the purposes of the amendment, they were concerned that the language was unduly restrictive and could result in delays on important weapons programs." H.R. Conf. Rep. No. 588, 93d Cong., 1st Sess. 44 (1973) (explaining amendment to 10 U.S.C. § 2307). In short, Congress wanted a legislative veto, but not at the price of destroying the President's authority to act in an emergency. Refusal to sever the legislative veto would produce the harsh result Congress was careful to avoid. Accordingly, the legislative veto may be severed from the remainder of the statute.

B.

Because of the way in which this statute is phrased, we must determine the proper way in which to sever the unconstitutional provision. The 1973 amendment reads:

> except that no order which requires payments thereunder in excess of $25,000,000 shall be placed with any person unless the Committees on Armed Services of the Senate and the House of Representatives have been notified in writing of such proposed order and 60 days of continuous session of Congress have expired following the date on which such notice was transmitted to such Committees and neither House of Congress has adopted, within such 60-day period, a resolution disapproving such order.

50 U.S.C. app. § 468(a). If the entire provision were severed, the statute would return to the form it had when first enacted. The language also permits another line of severance. If only the disapproval mechanism — *i.e.*, the words "and neither House of Congress has adopted, within such 60-day period, a resolution disapproving such order" — were removed, the provision would in effect be transformed into a report-and-wait requirement.[3]

---

[3] There is at least one other alternative: severance of the words "and 60 days of continuous session of Congress have expired following the date on which such notice was transmitted to such Committees and neither House of Congress has adopted, within such 60-day period, a resolution disapproving such order." Severance of this clause would eliminate the sixty-day delay period and the disapproval requirement but would preserve the reporting requirement. The Court's decisions, however, lend no support to this choice.

In order to decide this question, we must identify the portion of the statute that constitutes the unconstitutional legislative veto. Neither *Alaska Airlines* nor *Chadha* addressed this as a separate issue, although each case in some sense decided it, because each case described the statute that would remain after severance. The Court's unexplained decisions in the two cases point in opposite directions: *Alaska Airlines* supports severance of the entire provision added in 1973, but *Chadha* supports the line of severance that would leave a report-and-wait requirement. While the existing authorities thus do not provide a certain answer, we believe the better view to be that the entire clause added in 1973 constitutes the legislative veto that must be severed from the valid remainder of the statute.

Severance of the entire provision is supported by textual analysis and by *Alaska Airlines*. First, the legislative veto is most naturally read as a single requirement; it is only an accident of phrasing that makes it possible to produce a report-and-wait procedure by deleting certain words. The requirement of a report to Congress is integral to the operation of the legislative veto itself. It gives each House of Congress the notice and information needed to exercise its veto power, and provides a time-table for the one-house veto procedure. Without these, the legislative veto could not function, but they have no independent importance. There is therefore no reason to give the notification rule any independent status. Nothing in the legislative history demonstrates any perception of separate requirements for reporting, waiting, and disapproval. Instead, Congress seemingly viewed the entire clause as indivisible, with the reporting requirement and the sixty-day delay period operating only to facilitate the exercise of the disapproval power. The 1973 amendment therefore would not operate in the manner that Congress intended if only the disapproval mechanism is removed from the statute.

*Alaska Airlines*, in which the Supreme Court most recently considered questions of severability in depth, reinforces this conclusion. The statute at issue in that case authorizes the Secretary of Labor to issue regulations for the administration of an airline employee protection program. 49 U.S.C. app. § 1552(f)(1). The statute further provides:

> The Secretary shall not issue any rule or regulation as a final rule or regulation under this section until 30 legislative days after it has been submitted to the Committee on Commerce, Science, and Transportation of the Senate and the Committee on Public Works and Transportation of the House of Representatives. Any rule or regulation issued by the Secretary under this section as a final rule or regulation shall be submitted to the Congress and shall become effective 60 legislative days after the date of such submission, unless during that 60-day period either House adopts a resolution stating that that House disapproves such rules or regulations, except that such rules or regulations may become effective on the date, during

53

> such 60-day period, that a resolution has been adopted by both
> Houses stating that the Congress approves of them.

49 U.S.C. app. § 1552(f)(3). The Court characterized the entire second sentence of this subsection as the "legislative-veto provision which gave rise to this litigation," 480 U.S. at 682, and severed that provision from the rest of the statute. Likewise, the legislative veto provision added to the Selective Service Act in 1973 has the same three components: a report requirement, a wait requirement, and a disapproval mechanism. According to the opinion in *Alaska Airlines*, those provisions together constitute the legislative veto and should be treated as a unit for purposes of severance.

While we take some guidance from *Alaska Airlines*, we do not suggest that the case is dispositive. For one thing, the disputed question in that case was whether the regulatory authority the statute gives to the Secretary of Transportation survived the invalidation of the legislative veto. Once the Court determined that the legislative veto could be severed from the grant of authority to issue regulations, the Court did not have to decide what the "legislative veto" was. Also, the statute at issue in *Alaska Airlines* already contains a report-and-wait requirement (the first sentence of 49 U.S.C. app. § 1552(f)(3)) distinct from the provision the Court severed (the second sentence of 49 U.S.C. § 1552(f)(3)). Thus, severance did not eliminate all statutorily-mandated congressional oversight, a point the Court made in its opinion. *See* 480 U.S. at 689 ("should Congress object to the regulations issued, it retains a mechanism for the expression of its disapproval that reduces any disruption of congressional oversight caused by severance of the veto provision"). By contrast, severance of the entire provision added to section 18(a) of the Selective Service Act in 1973 would eliminate any statutory oversight procedure.

Severance of the disapproval mechanism alone is supported by other strands of the Court's severability analysis and by the Court' opinion in *Chadha*. Severance of the last clause of the 1973 amendment instead of the whole 1973 amendment results in legislation that Congress might have enacted. If the purpose of the 1973 amendment was to facilitate congressional oversight, preservation of a report-and-wait requirement would further this goal, albeit less successfully than the legislative veto Congress drafted.[4] *Chadha* lends some support to this line of severance. In *Chadha*, the Court's mode of severance removed the congressional disapproval mechanism while

---

[4] It also might be argued that this line of severance is most faithful to the Court's command to "refrain from invalidating more of the statute than is necessary." *Alaska Airlines*, 480 U.S. at 684. We doubt, however, that the Court's point is to save as many words as possible. Rather, the goal is to preserve "unobjectionable *provisions* separable from those found to be unconstitutional." *Id.* at 684 (quoting *Regan v. Time, Inc.*, 468 U.S. at 652) (emphasis added). That rule cannot be applied until we have decided whether the words that would produce a report-and-wait procedure constitute a separate "provision."

leaving a report-and-wait requirement.[5] Application of this technique to section 18(a) of the Selective Service Act would eliminate the congressional disapproval mechanism but preserve the rest of the section, thus effectively creating a report-and-wait requirement.

*Chadha*, however, can be distinguished from the situation we confront here. The history of the Immigration and Nationality Act indicates that Congress sought to confer substantial power on the Attorney General but also to retain some active role in the deportation process, whether or not that role involved the specific legislative veto in force at the time of *Chadha*.[6] The Court concluded on the basis of this history that the legislative veto was severable because Congress would not have simply returned to the private-bill system had it known the one-house veto to be impermissible. 462 U.S. at 934. The history also supported the conclusion that Congress was determined to retain an active role, and thus accorded with the Court's decision to sever the legislative veto so as to produce a report-and-wait mechanism. There is no similar evidence concerning the 1973 amendment to the Selective Service Act. Congress had not tinkered with the relative powers of the two branches and gave no indication that it had any strong separate interest in being involved in the decision if the legislative veto was unavailable. Under these circumstances, to change the legislative veto into a report-and-wait mechanism would represent a rewriting of the statute based on nothing more than speculation as to Congress's probable preferences. The Court's approach in *Alaska Airlines* avoids these difficulties.

To the extent the two cases are in tension, *Alaska Airlines* is authoritative, both because it is more recent and because it deals with severability in greater detail and therefore is more likely to represent the Court's considered judgment on the matter. The outcome in *Alaska Airlines* may represent a judgment (or at least an intuition) by the Court that the severance of entire legislative-veto mechanisms is less likely to produce statutes that Congress would never have written than is the speculative process of removing the portion of a single mechanism that seems to contain the legislative veto in isolation.

---

[5] The legislative veto appeared in section 244(c) of the Immigration and Nationality Act, 8 U.S.C.A. § 1254(c) (1970), which has since been amended, *see* 8 U S C. § 1254(c) Section 244(c)(1) of the Act required the Attorney General to report to Congress when he suspends the deportation of an alien. 8 U.S.C. § 1254(c)(1) (1970). Section 244(c)(2) of the Act provided.

> [I]f during the session of the Congress at which a case is reported, or prior to the close of the session of the Congress next following the session at which a case is reported, either the Senate or the House of Representatives passes a resolution stating in substance that it does not favor the suspension of such deportation, the Attorney General shall thereupon deport such alien or authorize the alien's voluntary departure at his own expense under the order of deportation in the manner provided by law. If, within the time above specified, neither the Senate nor the House of Representatives shall pass such a resolution, the Attorney General shall cancel deportation proceedings.

8 U.S.C. § 1254(c)(2) (1970). Thus, the first subsection contained a report requirement, and the second subsection contained both a wait requirement and a disapproval mechanism In *Chadha* the Court excised the disapproval mechanism but retained the wait requirement contained in the same subsection, observing that "[w]ithout the one-House veto, § 244 resembles the 'report and wait' provision approved by the Court in *Sibbach v. Wilson & Co.*, 312 U.S. 1 (1941)." 462 U.S. at 935 n.9.

55

## CONCLUSION

In sum, the one-House veto clause added to section 18(a) of the Selective Service Act in 1973 is unconstitutional. The legislative veto is severable from the remainder of the section 18(a). Under the best understanding of the Supreme Court's approach to severability, the 1973 amendment should be severed in its entirety, thus returning the statute to the form it had when originally adopted in 1948. As a matter of comity, however, you may wish to inform Congress of a contract of more than twenty-five million dollars. Moreover, depending on the urgency of the situation, you may wish to allow Congress time to decide if it wants to take legislative action concerning a contract.

JOHN C. HARRISON
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[6] As the Court explained, Congress originally permitted deportable aliens to remain in the United States through private bills. 462 U.S. at 933. In 1940, Congress authorized the Attorney General to suspend deportations but provided that Congress could overrule a suspension by a concurrent resolution. *Id.* at 933-34. When the concurrent resolution mechanism also proved burdensome, it was replaced with the scheme at issue in *Chadha*, under which the Attorney General's decision could be overridden by a one-House resolution. *Id.* at 934.