**UNITED STATES of America, Plaintiff,**

v.

**James Edward WHITFIELD, Defendant.**

**No. Cr. 3–88–7.**

United States District Court,
D. Minnesota,
Third Division.

July 27, 1988.

Lynn A. Zentner, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

George H. Smith, Minneapolis, Minn., for defendant.

## ORDER UPHOLDING CONSTITUTIONALITY OF NEW SENTENCING GUIDELINES

DEVITT, District Judge.

The basic question presented by this case, and by some 400 others across the nation, is whether the Congress may empower a commission, consisting in part of federal judges who are appointed and removable by the President, to establish binding and determinate sentencing standards for criminal cases.

The court believes the answer is yes, and that the Sentencing Reform Act of 1984, and the guidelines promulgated under it, are valid; I predict the United States Supreme Court will so hold when the issue reaches it from this circuit in *United States v. Johnson*, 682 F.Supp. 1033 (W.D. Mo.1988) for which a writ of certiorari was granted on June 13, 1988.

The United States district court opinions are sharply divided on the question. The guidelines sentencing system has been upheld by 21 district courts and found unconstitutional by 29. The issues have been well stated and thoroughly discussed in reasoned opinions by the district judges. It would serve no useful purpose to repeat the arguments, pro and con, or list the cases. They have been reported or summarized in West's *Federal Supplement*, in the brand new *Federal Sentencing Reporter*, a project of the Vera Institute of Justice, and in *Federal Sentencing Update*, distributed by the Federal Judicial Center.

The defendant in this case was convicted of bank robbery under 18 U.S.C. § 2113(a). The crime was allegedly committed on December 20, 1987. The new Federal Sentencing Guidelines are intended to apply to this case. Defendant moves to preclude their application as to him, claiming they violate the U.S. Constitution.

Defendant argues that the Sentencing Reform Act of 1984, and the Guidelines, violate the principle of Separation of Powers because the Act:

1. Impermissibly assigns non-judicial responsibilities to the Sentencing Commission, which is within the judicial branch.

2. Impermissibly assigns to the President removal powers over members of the Sentencing Commission and thus extends executive control over the judicial branch.

3. Requires that federal judges serve on the Commission and thus impairs the function of the judicial branch.

For the reasons to be stated, we find none of these arguments persuasive and hold the Sentencing Reform Act of 1984 and the Guidelines to be constitutional.

In considering the constitutionality of a legislative act, the court is mindful that it is performing its "gravest and most delicate duty," *Fullilove v. Klutznick*, 448 U.S. 448, 472, 100 S.Ct. 2758, 2771, 65 L.Ed.2d 902 (1980) and that whenever possible, the courts must construe congressional enactments so as to save them from claimed constitutional infirmities. *Driscoll v. Edison Light and Power Co.*, 307 U.S. 104, 114–115, 59 S.Ct. 715, 720–720, 83 L.Ed. 1134 (1939).

In this case, defendant argues only that the Act violates the principle of separation of powers. "The underlying purpose of the separation of powers doctrine is to prevent the concentration of executive, legislative and judicial power within a single, and potentially tyrannical, branch of government." *United States v. Sparks,* 687 F.Supp. 1145, 1152 (E.D.Mich.1988). Rather than adhering to rigidly defined classes of duties for the coordinate branches, the United States Supreme Court has counseled that the proper focus of the doctrine and the relevant inquiry for our purposes here is:

> the extent to which [the Act] prevents [one branch] from accomplishing its constitutionally assigned functions. Only where the potential of disruption is present must we then determine whether that impact is justified by an overriding need to promote objectives within the constitutional authority of Congress.

*Nixon v. Administrator of General Services,* 433 U.S. 425, 443, 97 S.Ct. 2777, 2790, 53 L.Ed.2d 867 (1976).

We consider each of defendant's claims seriatim.

### A. Assignment of Non–Judicial Responsibilities to the Commission

Defendant argues that the Act imposes executive or legislative responsibilities upon the Commission and that due to the Commission's placement in the judicial branch, such an assignment violates the doctrine of separation of powers. The government agrees that the Commission as defined in the Act appears to perform an executive function but argues that the congressional designation of the Commission as being within the judicial branch is severable.

The court is persuaded by Judge Enright's reasoning in *United States v. Ruiz–Villanueva,* 680 F.Supp. 1411 (S.D.Cal. 1988), and other cases which have similarly found, that the Commission is properly regarded as an independent commission within the judiciary which operates in aid of the judicial function and does not violate the separation of powers doctrine. Article III courts are authorized to promulgate rules regarding administration, operations and procedures and the congressional delegation of such rule-making authority to the judiciary is constitutional. *Sibbach v. Wilson & Co., Inc.,* 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479 (1941) reh. denied, 312 U.S. 713 (1941). The Commission's mandate is to formulate a comprehensive framework for sentencing decisions for the purpose of reducing unwarranted disparity. This task is in aid of the judicial function of sentencing and the Commission is properly within the judicial branch. *United States v. Ruiz–Villanueva,* 680 F.Supp. 1411 (S.D.Cal. 1988); *United States v. Macias–Pedroza,* No. Cr. 88–13 TUC RMB (D.Ariz. April 14, 1988); *United States v. Alves,* 688 F.Supp. 70 (D.Ma.1988).

### B. Presidential Removal Authority

The defendant argues that the power lodged in the President to remove a Commission member for good cause violates separation of powers principles by granting the President removal authority over Article III judges, thereby expanding the power of the executive at the expense of the judiciary. The defendant relies on *Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) in support of this argument.

But, the Presidential removal power properly cannot be considered control over judges on the Commission in their Article III capacities because the judges retain their position as Article III judges independently of their tenure as members of the Commission. Moreover, judges who serve on the Commission do not serve there in their judicial capacity, nor do they exercise responsibilities assigned exclusively to the judiciary by Article III. *United States v. Amesquita–Padilla,* 691 F.Supp. 277 (W.D. Wa.1988). Finally, the good cause standard set forth in the Act is sufficiently restrictive to prevent use of the removal power to achieve policy goals. *Id.* See also, *United States v. Macias–Pedroza,* No. Cr. 88–13 TUC RMB (D.Ariz. April 14, 1988); *Ruiz–*

*Villanueva,* 680 F.Supp. 1411 (S.D.Cal. 1988).

### C. Required Service on the Commission by Federal Judges

The defendant contends that the Act's inclusion of federal judges on the Commission threatens the impartiality and independence of the judiciary. The court notes at the outset that the Act requires the service of between three and six of the over 900 federal judges currently in the judiciary. The service of these judges on the Commission is strictly voluntary and the duties they perform are non-adjudicative. Federal courts have previously recognized that "Congress may impose some extrajudicial duties on Article III judges individually— duties that under the separation of powers doctrine may not be imposed on the courts qua courts." E.g., *In the Matter of the President's Commission on Organized Crime, Subpoena of Nicodemo Scarfo,* 783 F.2d 370, 375 (3rd Cir.1986).

The *Scarfo* ruling comports with many instances in our history in which Article III judges have served in a non-judicial capacity. The briefs and cases cite many non-judicial services rendered by judges. See, e.g., *United States v. Alves,* 688 F.Supp. 70 (D.Ma.1988). In this circuit, we have the example of Judge Cassie Collett, who was appointed United States District Judge for Missouri in 1937 and later served on the Eighth Circuit Court of Appeals. While holding the judgeships he served in the Executive Department in Washington in several capacities, including Administrator of the Office of Economic Stabilization. Later while still a federal judge he also served as a consultant in the White House under President Truman.

The non-judicial services of Chief Justice Warren (Kennedy Commission), Chief Justice Stone (Pearl Harbor), Chief Justice Jay (U.S. Ambassador) and of many others reflect an historical view of the claimed conflict which belies the claimed impropriety of dual service. The court finds that the voluntary and non-adjudicative service of federal judges on the Sentencing Commission does not occasion constitutional problems.

The principal issue here, as the Supreme Court emphasized in the *Nixon* case, supra, is not whether there is some overlapping of power between the three branches, but whether the sharing of power among them has the effect of depriving one of the branches of its basic assigned constitutional functions. Madison (in Federalist No. 48) warned that unless the departments of government are connected and blended, as to give each a constitutional control over the others, the kind of separation "essential to a free government can never in practice be duly maintained." Jethro K. Liberman, in his *"The Enduring Constitution, a Bicentennial Perspective,* translates this as saying " * * * unless each branch of the government shares some powers with the others, none will have the capacity to check and balance the other," and quotes the Supreme Court as recently recognizing the concept in holding that "[A] hermetic sealing off the three branches of the government from one another would preclude the establishment of a nation capable of governing itself effectively."

And so here, while there is some overlapping and sharing of power as between the three branches, it is not such as to prevent one branch from accomplishing its constitutionally assigned functions.

I am satisfied there is no basis for the claimed challenge to the constitutionality of the Sentencing Reform Act of 1984 or to the Guidelines promulgated under it. This conviction is reinforced by the Supreme Court's recent decision regarding the constitutionality of the independent counsel provisions of the Ethics in Government Act of 1978 (Act) in which the Court's analysis of separation of powers challenges focused on whether the Act constituted a usurpation of the powers of any branch by another. *Morrison v. Olson,* — U.S. —, — —, 108 S.Ct. 2597, 2621–2622, 101 L.Ed. 2d 569 (1988). The Sentencing Reform Act does not permit a usurpation of power by any of the coordinate branches and is constitutional.

Defendant's motion to preclude application of the Guidelines is DENIED.