**UNITED STATES of America, Plaintiff,**

v.

**Vicki Lee ROY, Defendant.**

**Crim. No. 6–88–59.**

United States District Court,
D. Minnesota,
Third Division.

Sept. 13, 1988.

Jerome Arnold, U.S. Atty., Lynn A. Zentner, Asst. U.S. Atty., Minneapolis, Minn., for plaintiff.

* "Average contribution" is equal to one-half of $2,500 per month contributions made during the period.

Daniel Scott, Federal Public Defender, and Scott Tilsen, Asst. Federal Public Defender, Minneapolis, Minn., for defendant.

## ORDER

DEVITT, District Judge.

Defendant Roy, an Indian, charged with assault with a dangerous weapon against another Indian, under 18 U.S.C. §§ 113(c) and 1153(a), moves that Sentencing Guidelines promulgated by the United States Sentencing Commission not be applied as to her because the Commission was created in violation of the United States Constitution, principally the Separation of Powers Doctrine.

Defendant makes several arguments. Some of the same points were raised and decided in our recent opinion in *U.S. v. Whitfield*, 689 F.Supp. 954 (D.Minn.1988), upholding the Guidelines. The analysis there set forth need not be repeated here but amplification may be desirable as to some of the issues raised by defendant. A more detailed consideration is given to the government's contention that the Sentencing Commission, in exercising rule-making authority, performs a function of the Executive Branch and should be recognized as an agency in the Executive Department.

### Service of Federal Judges on Commission

■ It is contended that the assignment of non-judicial functions to the Commission, designated as an independent commission in the Judicial Branch, precludes Article III judges from serving on the Commission. In addition to the rationale expressed in *Whitfield*, at p. 956–57, it is noteworthy that Canon 5G of the *Code of Conduct for United States Judges* specifically authorizes judges to accept appointment to a governmental commission where the "appointment of a judge is required by act of Congress." In associated commentary, it is said that "it is hardly the function of a code of judicial conduct to compel judges to refuse, without careful regard of the circumstances, tasks Congress has seen fit to authorize as appropriate in the public interest." It is also significant that the history

books reflect that it was commonplace at the time of the framing of the Constitution for judges to "hold other office" and that this was recognized by the citizenry at the time of the adoption of the Constitution. Vol. 1B, *Reams & C. Haworth, Congress in the Courts: A Legislative History*, 51 (1978). That same authority records that James Wilson, highly regarded as one of the great lawyer-members of the convention, defended the Constitution at the Pennsylvania Ratifying Convention on December 1, 1787 against objections that "the judges under this Constitution are not rendered sufficiently independent *because they may hold other offices.*"

### Presidential Power of Removal

Defendant urges that the President's power to remove members of the Commission improperly expands the power of the Executive.

■ In addition to the reasons set forth in *Whitfield*, under B at pages 956–57, it should be recognized that there is no expansion of the President's constitutional power in authorizing him to remove commissioners "for good cause shown." The power to remove for misconduct cannot be abused to make the commissioners subservient to the President. *Morrison v. Olson*, — U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988); *Humphrey's Executor v. U.S.*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935); *Wiener v. U.S.*, 357 U.S. 349, 78 S.Ct. 1275, 2 L.Ed.2d 1377 (1958).

Nor is the President restricted in the exercise of such authority to removing only members of the Executive Branch. The President's removal authority is constitutionally based on his authority to "take care that the laws be faithfully executed." U.S. Const. Art. II, Section 3. This is the same constitutional authority that is exercised in applying the criminal laws to alleged offenders and that power has no intra-branch restriction. That has been manifest in recent years by the prosecutions of members of Congress in the Abscam affair, and of Federal Judges Claiborne, Nixon and Hastings, and of Executive officials Deaver, Nofziger, North and

Poindexter. Logically, therefore, neither is the removal of commissioners subject to any intra-branch constitutional limitation on Presidential authority.

### Delegation of Legislative Power

■ The claim that the Sentencing Reform Act of 1984 delegates legislative power in violation of the Constitution has been raised in many of the approximately 226 district court cases in recent months which address the constitutionality of the Guidelines but has been upheld, according to my count, in only two of the cases.

But the defendant here raises a more specific issue and that is that Congress is absolutely prohibited under the separation of powers doctrine from delegating the task of promulgating guidelines with respect to "incarceration" of federal violators.

The validity of this contention, however, is belied by the U.S. Supreme Court's ruling with respect to the Assimilative Crimes Act, 18 U.S.C. § 1153(b). That Act, of long standing, effects a blanket adoption of the criminal laws of each state for areas within its boundaries subject to federal jurisdiction such as those enforced on the Minnesota Red Lake Indian Reservation in this state. Its constitutionality was upheld in *United States v. Sharpnack*, 355 U.S. 286, 78 S.Ct. 291, 2 L.Ed.2d 282 (1958). The Act even authorizes federal prosecutions under subsequently adopted state legislation. The effect of this statute is to delegate complete authority to each of the 50 state legislatures to define crimes and punishments constituting state criminal offenses that are made to apply to federal areas within the state and are prosecuted by federal attorneys and punished by federal judges in accordance with state law. The *Sharpnack* court held:

> The application of the Assimilative Crimes Act to subsequently adopted state legislation, under the limitations ... prescribed [held] a reasonable exercise of congressional legislative power and discretion.

*Id.* at 297, 78 S.Ct. at 298.

I am satisfied the congressional delegation of authority to the Sentencing Commission to establish the Sentencing Guidelines is similarly proper.

### The Government's Executive Branch Contention

■ A more substantive separation of powers issue is raised by the contention that the assignment of the Sentencing Commission to the Judicial Branch, and its required Article III judges' membership, impermissibly expands and impairs the judicial function. This contention assumes signal importance because the U.S. government, incongruous as it may seem, agrees with the contention! It urges that the Commission be placed in the Executive Branch because rulemaking is purely an executive function.

Some of my confreres have considered and rejected this contention. Judge Enright did so in *United States v. Ruiz–Villanueva*, 680 F.Supp. 1411 (S.D.Cal.1988). But the government's brief here deals extensively with the issue which requires a thorough examination of the merits of the government's argument.

The Executive Branch argument is based upon the assertion that the Commission in promulgating the Sentencing Guidelines was exercising an executive *function* under *Bowsher v. Synar*, 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986) where the Court stated:

> "Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution of the law.'"

*Bowsher, Id.*, 106 S.Ct. at 3192, Govt. Br. 13. From this small beginning the government argues that the Sentencing Commission is exercising an Executive Branch function, in constitutional terms, Govt. Br. p. 27–28, and hence the placement of the Commission "in the Judicial Branch" should be severed from the Act. Additional support for this theory is thought to be derived by repeated conclusory assertions to the effect that "Congress created an entity with the functions and structure of an Article II executive entity." Govt. Br.

38; see also pp. 8, 9, 14 and 18. But the isolated statement in *Bowsher* does not support such interpretation or conclusion. "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used," as Chief Justice Marshall said in *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399, 5 L.Ed. 257 (1821).

### Bowsher statement analyzed

*Bowsher* is not an authority on "rulemaking" because it did not involve any rules or "rulemaking." It was a case involving the application of a statute, the "Gramm–Rudman–Hollings Act." *Bowsher*, 106 S.Ct. at 3184. Thus, there is no valid basis for applying its general language even if it does support the government's contention to the "functions" exercised by the Commission which are purely delegated and legislative.

If "[i]nterpreting a law enacted by Congress to implement the legislative mandate" were held to be an exclusive function of the Executive Branch, as the government contends, then all courts would become Executive Branch agencies overnight because that is what we judges do every day in our decisions, orders, opinions, judgments and decrees. *All* adjudicative action does have an executive component, in non-constitutional terms. This basic distinction between the exercise of an "executive function—as distinguished from executive power in the constitutional sense—..." was pointed out in *Humphrey's Executor v. U.S.*, 295 U.S. 602, 628, 55 S.Ct. 869, 874, 79 L.Ed. 1611 (1935). Thus, interpretation and implementation of delegated legislative authority, which is short of the exercise of executive authority in the constitutional sense, that does not *administer, manage,* or *direct the power of execution to enforce something by force of penalty,*[1] does not exercise executive branch constitutional power, or create an entity in the Executive Branch.

### Delegated Rulemaking Authority

"[R]ulemaking" is *not* an *exclusive* function of the Executive Branch. In fact, the first delegation of "rulemaking" authority to be upheld was a direct delegation by Congress to the courts, *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43, 6 L.Ed. 253 (1825). In that case Chief Justice Marshal, in upholding a delegation of legislative power to the courts to engage in rulemaking, remarked:

> "[C]ongress may certainly delegate to others, powers which the legislature may exercise itself [even though] these things might ... be done by the legislature, without the intervention of the courts ... The line has not been exactly drawn ... in which a general provision may be made and power given to them who are to act under such general provisions, *to fill up the details.*" (Emphasis supplied.)

More recently, beginning in 1934 (48 Stat. 1064), Congress has continued to exercise the authority upheld in *Wayman* and delegated to the Supreme Court the power to prescribe Rules of Civil Procedure, 28 U.S.C. § 2072; and subsequently Rules of Criminal Procedure, 18 U.S.C. §§ 3771, 3772 (before and after verdict); the Federal Rules of Evidence, 28 U.S.C. § 2076; and rules on other subjects. The validity of the Rules Enabling Act 28 U.S.C. § 2072, was upheld in *Sibbach v. Wilson*, 312 U.S. 1, 9–10, 61 S.Ct. 422, 424–25, 85 L.Ed. 479 (1940), and *Humphrey's Executor v. U.S., supra*, 295 U.S. at 628, 55 S.Ct. at 874, holds that rulemaking is "part quasi-legislative and in part quasi-judicial[ ]." There is thus no doubt that "rulemaking" is *not* an exclusive executive function. Rules are rules whether they be substantive, remedial, procedural, legislative or otherwise.

That Congress may delegate authority to promulgate sentencing rules to the Commission is consistent with *Wayman v. Southard, supra,* and the court's decision in *Ex Parte United States*, 242 U.S. 27, 37 S.Ct. 72, 61 L.Ed. 129 (1916). This latter decision details the separation of powers under the Constitution with respect to punishment for criminal offenses. Its holding is well described in a headnote:

---

1. Websters New International Dictionary, Second Edition, 1958, p. 892.

The Constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment; to the judiciary the power to try offenses under those laws and impose punishment within the limits and according to the methods therein provided; to the executive the power to relieve from the punishment so fixed by law and so judicially ascertained and imposed.

*Ex Parte United States*, at 27, 37 S.Ct. at 72.

This decision recognizes that Congress has the legislative power to define crimes against the United States and to prescribe the punishment. This separation of powers, with respect to criminal offenses, has been recognized and applied for over 200 years. During this entire period Congress has, in effect, delegated to each individual judge the legislative authority to prescribe punishment in individual cases in accordance with their unfettered discretion, limited only by a statutory maximum penalty (except with respect to those crimes for which a minimum or maximum penalty is prescribed by statute). This relationship between Congress and the Judiciary is of long standing as the House Report indicated in *rejecting* the suggestion that Sentencing Guidelines be promulgated by the Executive Branch:

Traditionally, the courts and Congress have shared responsibility for establishing Federal sentencing policy. Congress defines criminal conduct and sets maximum sentences, while the courts impose sentences in individual cases. Any suggestion that the Executive Branch should be responsible for promulgating the guidelines would present troubling constitutional problems. More importantly, it would fundamentally alter the relationship of the Congress and the Judiciary with respect to sentencing policy and its implementation. *Giving such significant control over the determination of sentences to the same branch of government that is responsible for the prosecution of criminal cases is no more appropriate than granting such power to a consortium of defense attorneys.*

House Report to Sentencing Revision Act of 1984, H.Res. 6012, H.Rep. No. 98–1017, 98th Cong.2d Sess., Sept. 13, 1984 at 94–95, (Emphasis supplied). If the power of the Executive Branch to prosecute criminal violations were joined with the power to prescribe sentences for those convicted, it would constitute a potential for tyranny. These powers should not be lodged in the prosecuting branch any more than in a "consortium of defense attorneys." House Report, *supra.*

### The Guidelines and Executive Authority

■ Congress in the Sentencing Reform Act established standards for sentencing guidelines and in doing so made a *lesser delegation* of legislative power to the Sentencing Commission than that previously delegated to individual judges. It authorized the independent Sentencing Commission to prescribe guidelines for the application of judicial discretion channeled within the statutory limits of the defined crime and the statutory sanction. The Sentencing Guidelines issued pursuant thereto, constitute the rules for the exercise of sentencing discretion by all courts.

In issuing such guidelines, the Commission did not exercise, or encroach upon, any executive function. The Executive Branch has no constitutional or statutory power with respect to the initial sentences adjudged by trial judges, and that is as far as the Sentencing Guidelines apply. As noted in *Ex Parte United States, supra,* the Executive's constitutional "power [is] to relieve from punishment so fixed by law and so judicially ascertained and imposed." This power stems from Art. II, Sec. 2 of the Constitution which provides: "The President .. shall have power to grant reprieves and pardons for offenses." As head of the Executive Branch, the President also has general authority to execute sentences to confinement as adjudged by the courts and in keeping therewith we judges traditionally have sentenced convicted persons to the custody of the Attorney General. This is the extent of constitutional executive authority in the area of criminal sanctions and the activities of the Sen-

tencing Commission do not encroach thereon in any way. Nor do these constitutional powers require Congress to delegate authority to promulgate sentencing guidelines to the Department of Justice-the prosecutor.

### The Commission's Authority

The end and all of the Commission's authority is to promulgate sentencing guidelines for the Judiciary. In so doing, it only exercises *delegated legislative power* and its functions never extend beyond that delegation. It never adjudicates sentences and thus never exercises the pure constitutional power of imposing sentences in "cases" or "controversies." It functions simply as an aid to the Judiciary. In this respect it is similar to the probation division, which also functions under the courts, 28 U.S.C. §§ 3602, 3603, and, under the new Act, will continue to aid in federal sentencing, though with substantially enlarged powers and duties. 18 U.S.C. § 3603; 28 U.S.C. § 994(w).

### In re Sealed Case—Morrison v. Olson.

In support of its theory that the functions of the Sentencing Commission properly should be assigned to the Executive Branch (i.e. Justice Department) the government relies upon the decision, *In re Sealed Case*, 838 F.2d 476 (D.C.Cir.1988), Govt. Br., 12. This 2 to 1 decision, it was later determined, was based on an overly rigid construction of the separation of powers doctrine and had not been reversed during the period that many of the initial attacks were being made on the Guidelines. However, *Sealed Case* was overruled in *Morrison v. Olson,* —— U.S. ——, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), and with it went the misguided argument that would preclude Congress from delegating legislative power to an independent commission in the Judicial Branch.

### The Executive Function

The government, relying again on a conclusory assertion, further states that "Congress assigned the Commission the *executive function* of promulgating general, pro-spective, and binding guidelines pursuant to legislative delegation." Govt. Br. at 27 (emphasis supplied). But, as pointed out above, this is *not* an executive function in the constitutional sense, much less an exclusive one. Calling it an "executive function" does not make it one.

### Comparison to other agencies

The government seeks to derive some support for its assertion that rulemaking is an "exclusive executive function" with the claim that the Commission is like the FTC and SEC, both independent agencies. But the Sentencing Commission differs substantially from those agencies upon which the government places unsupportable reliance. True, the cited agencies and the Commission both issue rules pursuant to delegated legislative authority, but there the comparison stops. Rulemaking is practically the sole function of the Sentencing Commission. In its "rulemaking" the Commission ceases its activity when it has exercised its delegated *legislative* authority. In contrast, the FTC and SEC, and other executive agencies, exercise delegated legislative power in "rulemaking", then exercise quasi-judicial authority in interpreting their own rules, and finally in applying their own rules. The Sentencing Commission performs no such quasi-judicial function and does not apply the Guidelines. In sharp contrast, it does not implement its rules (guidelines). It is the Judiciary that implements the Sentencing Guidelines in imposing sentences on convicted offenders.

Thus, the Sentencing Commission is not authorized to exercise executive or purely judicial (adjudicative) power in the constitutional sense. Its sole function is to exercise delegated legislative power. And, as set forth above, there is no law, statute or constitutional authority that supports the conclusion that "rulemaking" is an exclusive executive function. In fact, when executive branch agencies engage in "rulemaking" they are exercising delegated *legislative* power, not executive power, and it is not until the rules are applied and *enforced* by the executive agencies that any executive power in the constitutional sense

is exercised. Until that function is exercised, insofar as rulemaking is concerned, Executive Branch agencies exercise only delegated legislative power. The Commission, therefore, can never undermine Executive Branch authority that it never exercises. Cf. *CFTC v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 3258, 92 L.Ed.2d 675 (1986) (even limited intrusion into Judicial Branch held permissible).

### Conclusion

For these reasons, we conclude that the contention that the Sentencing Commission is exercising Executive Branch functions, in the constitutional sense, is completely lacking in merit. The claim was originally based upon a misreading of a single sentence in *Bowsher, supra*, and was thereafter expanded by conclusory assertions. It gathered further momentum by mistakenly comparing the single function of the Sentencing Commission with the multifunctional commissions and agencies without recognizing that the authority of the Sentencing Commission does not extend beyond the exercise of delegated legislative power. There is no showing that the Commission can ever exercise any constitutional executive function. Its sole function under the Act is to aid the Judiciary, and in complying with that responsibility it does not exercise any executive function in the constitutional sense. It was thus constitutional for the Congress to establish it as an independent agency in the Judicial Branch.

A principal purpose of the Sentencing Reform Act of 1984 and of the guidelines was to minimize, and hopefully to eradicate, unjustified disparity in sentences imposed on similarly situated defendants with similar criminal histories convicted of similar crimes under similar circumstances. Many previous efforts to accomplish this laudable objective have proved ineffective. We judges long have been authorized to exercise practically unfettered discretion in sentencing. The critical problem of unjust disparity which this has occasioned has long existed not only in the United States but in the Mother Country. Lord Mansfield recognized the problem more than 200 years ago when he urged in *Rex v. Wilkes*, 4 Burr. 2527, 2540 (1770); 98 Eng.Rep. (reprint) 327, 334, that sentencing discretion be harnessed. He said discretion "must not be arbitrary, vague and fanciful, but legal and regular." He advocated that it be *"governed by rule."*

That is what the Congress apparently had in mind in enacting the Sentencing Reform Act. It created the machinery for establishing rules within which we judges were to exercise a limited discretion in the interest of rationalizing sentencing, principally to the end of curbing unjustified disparity.

Emboldened by the United States Supreme Court's recent significant decision in *Morrison*, I predict the Court will find the Act and Guidelines under it to be, in all respects, a constitutional exercise of congressional authority.

Defendant's Motion to Preclude Application of the Sentencing Guidelines is DENIED.