SMITH, Circuit Judge,
dissenting.
Having read the same briefs and heard the same oral argument, the majority and I seem almost to be deciding two different appeals. In the majority’s view, this case presents a simple, run-of-the-mill class action settlement agreement binding two willing, sophisticated parties. As such, according to the majority, the District Court was obligated, as a fiduciary for the absent class members, to reject any motion that would harm those class members.
In my view, this case is about mootness and standing, two interrelated doctrines that are derived from Article III of the Constitution’s “case or controversy” requirement. The District Court unquestionably had a fiduciary duty to the absent class members. But that duty is triggered only within the confines of Rule 23(e),[1] i.e., when dealing with settlements, voluntary dismissals, or compromises. It cannot expand the boundaries of federal court jurisdiction under Article III. Here, the District Court gave effect to a congressional mandate, the Credit and Debit Card Receipt Clarification Act of 2007 (the “Clarification Act” or the “Act”), Pub.L. No. 110— 241, 122 Stat. 1565 (2008), an enactment that effectively stripped standing for claims based solely on the printing of a receipt containing the expiration date of a credit or debit card, id., § 3(a). Congress instructed that the Act should be “applied] to any action, other than an action which has become final,” id., § 3(b), meaning that the Act applied to this case because at the time it was passed the District Court had not yet held a fairness hearing, issued final approval of the settlement, or entered final judgment. Although I disagree with the District Court’s reliance on Rule 23(e) in reaching its outcome, because I conclude that the Clarification Act rendered the named plaintiffs’ cases moot, I would reach a similar outcome. I would vacate the judgment on the pleadings in favor of Verizon and remand this case to the District Court with instruc *598 tions to dismiss the named plaintiffs’ complaints as moot.
Before turning to this issue, however, I must explain the origins of the Clarification Act, and the procedural and factual posture of this case — aspects of this case that the majority all but overlooks.
I.
The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.,[2] was amended in 2003 by the Fair and Accurate Credit Transaction Act (“FACTA”), Pub.L. No. 108-159, 117 Stat. 1952 (2003), to, inter alia, prevent identity theft. To serve this end, FACTA, subject to a few exceptions not relevant to this appeal, prohibited the electronic printing of more than the last five digits of a credit or debit card account number or the card’s expiration date on a receipt:
[N]o person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.
15 U.S.C. § 1681c(g)(1). This prohibition became effective on December 4, 2006, three years after the date of FACTA’s enactment, for “device[s] that electronically print[ed] receipts ... that [were] in use before January 1, 2005.” Id. § 1681c(g)(3)(A). For devices first put into use “on or after January 1, 2005,” the prohibition became effective one year after FACTA’s enactment, on December 4, 2004. Id. § 1681c(g)(3)(B).
Individuals who willfully fail to comply with this deadline risk civil liability under the Fair Credit Reporting Act:
Any person who willfully fails to comply with any requirement imposed under [the Fair Credit Reporting Act] with respect to any consumer is liable to that consumer in an amount equal to the sum of—
(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or ...
(2) such amount of punitive damages as the court may allow; and
(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney’s fees as determined by the court.
15 U.S.C. § 1681n(a).
In June of 2008, Congress passed the Clarification Act, which modified the civil liability provision to exclude instances between December 4, 2004, and June 3, 2008, where an individual did not remove an expiration date of a credit or debit card from a receipt, but otherwise complied with FACTA:
[A]ny person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [June 3, 2008] but otherwise complied with the requirements of [15 U.S.C. § 1681c(g)] for such receipt shall not be in willful noncompliance with [that] section ... by reason of printing such expiration date on the receipt.
*599 Pub.L. No. 110-241, § 3(a) (codified at 15 U.S.C. § 1681n(d)). This exclusion of expiration date claims “applied] to any action, other than an action which ha[d] become final ... without regard to whether such action [wa]s brought before or after the date of the enactment of th[e] [Clarification] Act.” Pub.L. No. 110-241, § 3(b).
The purpose of the Act was “to ensure that consumers suffering from any actual harm to their credit or identity [we]re protected while simultaneously limiting abusive lawsuits that d[id] not protect consumers but only resulted] in increased cost to business and potentially increased prices to consumers.” Id., § 2(b). In Section 2 of the Act, Congress set forth its findings explaining its decision to exclude liability for the printing of a card’s expiration date. Congress acknowledged that it enacted FACTA to reduce identity theft, and that, as written in 2003, FACTA prohibited the printing of a credit or debit card’s expiration date or more than the last five digits of that card’s account number. Id., § 2(a)(1) and (2). Congress found that these requirements were mistakenly understood by “[m]any merchants” as requiring only a truncation of the “account number down to the last 5 digits[.]” Id., § 2(a)(3). It also found that FACTA resulted in “hundreds of lawsuits ... alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act even where the account number was properly truncated.” Id., § 2(a)(4). According to Congress, “[n]one of these lawsuits contained an allegation of harm to any consumer’s identity.” Id., § 2(a)(5). Congress further found that “[d]espite repeatedly being denied class certification, the continued appealing and filing of these lawsuits represented] a significant burden on the hundreds of companies that ha[d] been sued and could raise prices to consumers without corresponding consumer protection benefit.” Id., § 2(a)(7).
II.
Verizon was one of the many merchants that Congress found had failed to remove credit or debit card expiration dates from receipts. See id., § 2(a)(3). In August of 2007, Nicole Ehrheart filed one of the “hundreds of lawsuits ... alleging that the failure to remove the expiration date was a willful violation of the Fair Credit Reporting Act,” id., § 2(a)(4), in the United States District Court for the Western District of Pennsylvania. She filed her complaint as a class action, purporting to represent a class of individuals harmed by Verizon’s printing of credit and debit card account numbers and expiration dates, but her personal injury was limited to the printing of an expiration date. She alleged that on June 7, 2007, Verizon gave her an electronically printed receipt on which the expiration date of her credit or debit card had been printed. Although there were no specific “allegationfs] of harm to any consumer’s identity,” id., § 2(a)(5), Ehrheart believed that she deserved redress. According to her complaint, Verizon violated 15 U.S.C. § 1681e(g), entitling her to statutory damages, punitive damages, costs, and attorney fees. In December of 2007, the District Court referred Ehrheart’s action to mediation, and by late February of 2008 the parties had agreed to settle.
A similar putative class action had been filed by John J. Garland in the United States District Court for the Western District of Tennessee on July 27, 2007. Unlike Ehrheart, Garland alleged his personal injury in an ambiguous fashion, not stating whether he received a receipt with his credit or debit card account number, expiration date, or both printed on it. On April 14, 2008, Garland’s action was trans *600 ferred to the Western District of Pennsylvania and consolidated with Ehrheart’s action. On April 22, 2008, Ehrheart, Garland, and Verizon executed a Class Action Settlement Agreement (the “Settlement Agreement” or the “Agreement”).

The Settlement Agreement

The Settlement Agreement was limited to individuals who received electronically printed receipts displaying a debit card’s expiration date. The Agreement defined the “Class” as:
All persons who received electronically printed receipts displaying an expiration date from Verizon Wireless at the point of sale or transaction in a Verizon Wireless Communications store, in a transaction occurring between December 4, 2006 and April 21, 2008, where payment was made with a debit card and authorized by a personal identification number.
The parties stipulated and agreed that the settlement was conditioned on the District Court’s preliminary and final approval. According to the Agreement, a preliminary approval order was needed to: (1) certify the class for settlement purposes; (2) appoint a class representative; (3) confirm that the likelihood of final approval of the settlement was sufficient to warrant sending out notice to the class; and (4) schedule a fairness hearing to determine the fairness, adequacy, and reasonableness of the Settlement Agreement, and (5) to enter final judgment. Settlement Agreement 8 (¶ 1.19). Once the District Court entered the preliminary approval order and notice was disseminated to the class, it was to conduct a fairness hearing, as required by Rule 23(e). If the Settlement Agreement met the requirements of Rule 23(e), then the District Court was to enter an order of final approval and enter final judgment.
The parties agreed that if they did not receive final approval of the settlement or if the associated judgment did not become final for any reason, the Agreement would be “null and void ab initio ”:
In the event that the Court does not execute and file the Order Granting Final Approval of Settlement, or in the event that the associated Judgment does not become Final for any reason, this Settlement Agreement shall be deemed null and void ab initio, it shall be of no force or effect whatsoever, [and] it shall not be referred to or utilized for any purpose whatsoever[.]
Settlement Agreement 2;[3] id. at 15-16 (¶ 2.4.8) (The parties agreed that “[i]f the Court rejected] the Stipulation, fail[ed] to enter the Order of Final Approval, or fail[ed] to enter the Judgment, th[e] Agreement shall be void ab initio, and Verizon ... shall have no obligations to make any payments under the Settlement Agreement.”). In the event that the Settlement Agreement was “terminated pursuant to its terms ... or ... [wa]s not effectuated for any reason,” the litigation was to proceed “as if no party had ever agreed to [the] proposed settlement, without prejudice to the right of any party to continue to seek or to oppose class certification.” Id. at 5.

Preliminary Approval of the Settlement Agreement

On April 22, 2008, the parties filed a joint motion for preliminary approval of *601 the Settlement Agreement, requesting that the District Court approve the terms of the settlement, certify the class for settlement, approve the proposed class notice to be sent to the class, and schedule a fairness hearing. On April 24, 2008, the District Court granted preliminary approval of the Settlement Agreement, and scheduled a fairness hearing for August 27, 2008.

Vacatur of the Order Granting Preliminary Approval

On June 9, 2008, six days after the passage of the Clarification Act, Verizon moved to vacate the District Court’s preliminary approval order. In its motion, Verizon pointed out that “Congress enacted a law that unequivocally extinguished [the] [plaintiffs’ claims underlying the proposed settlement.” Because “no valid claims exist[ed] to settle,” Verizon argued, “the proposed settlement [wa]s not ‘fair, adequate and reasonable’ ” and the District Court could not provide final approval for the settlement.
On June 13, 2008, the District Court granted Verizon’s motion to vacate the prehminary approval order. In its order, the District Court reasoned that “Congress made clear that the [Clarification] Act ‘... applied] to any action, other than an action which ha[d] become final ... ’ ” and that “[t]his litigation [wa]s not final,” as it had yet to give final approval to the Settlement Agreement. Because Congress eliminated the plaintiffs’ cause of action, the District Court reasoned, it had to vacate its preliminary approval of the Settlement Agreement. The plaintiffs moved for reconsideration and the District Court denied the motion, rejecting the argument that it should ignore the Act and simply enforce the Settlement Agreement negotiated by the parties because its only remaining role under Rule 23(e) was to ensure that the settlement was fair, reasonable and adequate to the absentee class members. Aside from reiterating its view that the Clarification Act extinguished the plaintiffs’ claim, the District Court added that under Rule 23(e), “[n]o class action settlement can be fair, adequate or reasonable when Congress has determined that such relief is unfair and unreasonable.”
Verizon then moved for judgment on the pleadings, asserting that judgment was warranted because the plaintiffs’ claims had been eliminated by the Clarification Act. The plaintiffs opposed the motion, relying on the same arguments offered in their opposition to Verizon’s motion to vacate the preliminary approval order. Notably, they never asserted that they had claims other than those based on the failure to remove credit or debit card expiration dates. The District Court granted Verizon’s motion for judgment on the pleadings on September 25, 2008.
The plaintiffs filed this timely appeal, challenging four orders by the District Court, all of which turn on whether it properly vacated its preliminary approval of the Settlement Agreement: (1) the June 13, 2008 order granting Verizon’s motion to vacate preliminary approval; (2) the September 25, 2008 order denying the motion for reconsideration; (3) the September 25, 2008 order granting Verizon’s motion for judgment on the pleadings; and (4) the judgment entered on September 25, 2008.
III.
The Clarification Act, without question, extinguished Ehrheart’s injury-in-fact as alleged in her complaint. Without an injury-in-fact, a requirement for Article III standing, the District Court was obligated to dismiss Ehrheart’s action as moot immediately. It lacked the authority to hold the required fairness hearing, enter an *602 order of final approval for the settlement, or enter final judgment in the action. To do so would have violated Article Ill’s “case or controversy” limitation on its jurisdiction. Garland’s complaint, on the other hand, left open the possibility that Verizon printed more than the last five digits of his credit or debit card account number — a viable claim notwithstanding the Clarification Act — but his arguments throughout this litigation show that he, like Ehrheart, suffered an injury based solely on the printing of the expiration date of his credit or debit card. Thus, I likewise conclude that, after the passage of the Clarification Act, Garland lost standing and his claim was rendered moot.
I reach these conclusions based on two observations. First, the Clarification Act applied to both plaintiffs’ complaints, despite the District Court’s issuance of preliminary approval for the Settlement Agreement. Second, Article III requires that a plaintiff have an injury-in-fact, and the Act eliminated the printing of a credit or debit card’s expiration date as a cognizable injury for which an individual may seek relief under FACTA.
A.
The Clarification Act plainly extinguished causes of action based solely on the printing of a credit or debit card’s expiration date prior to the District Court’s final approval of the settlement and entry of final judgment. In relevant part, the Act stated:
[A]ny person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection [June 3, 2008] but otherwise complied with the requirements of [15 U.S.C. § 1681c(g)] for such receipt shall not be in willful noncompliance with [that] section ... by reason of printing such expiration date on the receipt.
Pub.L. No. 110-241, § 3(a) (codified at 15 U.S.C. § 1681n(d)). This provision applies to “any action, other than an action which has become final ... without regard to whether such action [wa]s brought before or after the date of the enactment of this Act.” Pub.L. No. 110-241, § 3(b).
Although Congress did not define the term “final” in the Clarification Act, it is obvious that it was referring to finality in the judicial sense, as it enacted the legislation to rein in “abusive lawsuits,” id,., § 2(b). Congress’s findings explained that “the continued appealing and filing of these lawsuits represented] a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without corresponding consumer protection benefit.” Id., § 2(a)(7). Taking into account the Act’s goal of eliminating wasteful lawsuits, I conclude that Congress intended the federal courts to apply the Clarification Act to any action that was not, in the judicial sense, “final.”
In the judicial context, a “ ‘final decision’ generally is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.” Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911 (1945). In class action litigation where the parties have negotiated a settlement, voluntary dismissal, or compromise, Rule 23(e) lays out procedures for achieving finality in the dispute. Fed.R.Civ.P. 23(e). That rule establishes that, regardless of the parties’ compromise, the court must hold a fairness hearing, Fed.R.Civ.P. 23(e)(2), and determine whether to approve the settlement before the matter is final, Fed. R.Civ.P. 23(e). This long-standing procedural requirement first appeared in the 1966 amendments to the rule. See Fed. R.Civ.P. 23 (1966) (stating that “[a] class *603 action shall not be ... compromised without the approval of the court”). Since at least 2003, Rule 23(e) has explicitly stated that court approval of a class action settlement may be given “only after a hearing and on finding that [the settlement] is fair, reasonable, and adequate.” Fed.R.Civ.P. 23(e)(2); see id., Advisory Committee Notes on 2003 Amendments. Congress was well aware of the 2003 amendments to Rule 23 because they were passed onto it for review pursuant to the Rules Enabling Act. See 28 U.S.C. §§ 2072, 2074.[4] Thus, when Congress enacted the Clarification Act and specified that it applied to “any action, other than an action which has become final,” Pub.L. No. 110-241, § 3(b), it knew that a class action settlement pending district court approval under Rule 23(e) was not an action which had become final.
Accordingly, because the District Court had yet to conduct a fairness hearing, issue final approval of the settlement, or enter final judgment in this case — all activities contemplated under Rule 23(e) and required under the Settlement Agreement[5] — the litigation could not have been final as of the date the Clarification Act was passed, June 3, 2008. As such, the Clarification Act applied to the Ehrheart and Garland actions.
The District Court’s preliminary approval of the Settlement Agreement cannot rationally be construed as a final disposition of this case in any sense. While it is true that an order of preliminary approval may establish “an initial presumption of fairness” in some circumstances, In re General Motors Corp. Pick-Up Truck Fuel Tank Products Liability Litigation, 55 F.3d 768, 785 (3d Cir.1995) [hereinafter In re GM Truck],[6] that presumption does not inexorably result in final approval of a settlement. “[I]t is clear that the court should not give rubber-stamp approval.” 4 William B. Rubenstein, Alba Conte, & Herbert B. Newberg, Newberg on Class Actions § 11.41 (4th ed.2009) [hereinafter Newberg on Class Actions], Prior to final approval of a settlement, the district court must hold a fairness hearing and examine at least nine factors to determine whether the settlement is fair, reasonable, and adequate. In re GM Truck, 55 F.3d at 785.[7] *604 This examination must be “exacting and thorough” because the “adversariness of litigation is often lost” once parties agree to settle:
The settling parties frequently make a joint presentation of the benefits of the settlement without significant information about any drawbacks. If objectors do not emerge, there may be no lawyers or litigants criticizing the settlement or seeking to expose flaws or abuses. Even if objectors are present, they might simply seek to be treated differently than the class as a whole, rather than advocating for class-wide interests. The lack of significant opposition may mean that the settlement meets the requirements of fairness, reasonableness, and adequacy. On the other hand, it might signify no more than inertia by class members or it may indicate success on counsel’s part in obtaining, from likely opponents and critics, agreements not to object.
Manual for Complex Litigation, Fourth, § 21.61. “Even if there are no or few objections or adverse appearances before or at the fairness hearing, the judge must ensure that there is a sufficient record as to the basis and justification for the settlement.” Id., § 21.635; Fed.R.Civ.P. 23(e)(2) (stating that the court may only approve the settlement on “finding that it is fair, reasonable, and adequate”) (emphasis added). “The record and findings must demonstrate to a reviewing court that the judge has made the requisite inquiry and has considered the diverse interests and the requisite factors in determining the settlement’s fairness, reasonableness, and adequacy.” Manual for Complex Litigation, Fourth, § 21.635; Fed.R.Civ.P. 23(e), Advisory Committee Notes on 2003 Amendments (“The findings must be set out in sufficient detail to explain to class members and the appellate court the factors that bear on applying the standard.”).[8]
A district court may deny final approval for a settlement in a variety of situations, including where absent class members’ interests are not served, In re GM Truck, 55 F.3d at 785, the defendant “selects among [plaintiff] attorneys for competing classes and negotiates an agreement with the attorneys who are willing to accept the lowest class recovery (typically in exchange for general attorney fees),” Manual for Complex Litigation, Fourth, § 21.61, “class members [receive] illusory nonmonetary benefits ... while granting substantial monetary attorney fee awards,” id., defendants seek to “imposte] ... strict eligibility conditions ... [such] that many [class] members will be unlikely to claim benefits,” id., the settlement treats “similarly situated class members differently,” id., the settlement releases “claims against parties who did not contribute to the class settlement,” id., or the settlement releases “claims of parties who received no compensation in the settlement,” id.[9]
*605 The factors considered in determining whether a settlement is fair, reasonable, and adequate, see supra n. 7, “are [just] a guide; an unfavorable conclusion regarding one or more factors does not automatically render the settlement unfair.” 2 Joseph M. McLaughlin, McLaughlin on Class Actions: Law and Practice § 6:7 (6th ed.2010). Each settlement agreement must be evaluated based on the particular circumstances of that case and, as shown by the examples above, there are many reasons why a district court may not issue final approval for a settlement agreement.[10]
In sum, there was still much for the District Court to do to conclude this litigation by way of settlement. Thus, this matter was not final and the Clarification Act applied to both named plaintiffs’ complaints.
B.
The majority claims that the District Court could not have vacated its order of preliminary approval without losing sight of its tightly focused role as a fiduciary for the absentee class members. Indeed, it is well established that “the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members[.]” In re GM Truck, 55 F.3d at 785; Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997) (“Rule 23(e) ... protects unnamed class members from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise.”) (internal quotation marks omitted); In re AT & T Corp. Secs. Litig., 455 F.3d 160, 175 (3d Cir. 2006); In re Cendant Corp. Litig., 264 F.3d at 296. But Rule 23(e) and the District Court’s corresponding duties under that rule apply to only proposed settlements, voluntary dismissals, or compromises. Fed.R.Civ.P. 23(e). They do not apply to involuntary dismissals, such as sua sponte dismissal for mootness. In Amchem Products, Inc., the Supreme *606 Court stated, albeit in dicta, that “Rule 23’s requirements must be interpreted in keeping with Article III constraints, and with the Rules Enabling Act, which instructs that rules of procedure ‘shall not abridge, enlarge or modify any substantive right[.]’ ” 521 U.S. at 613, 117 S.Ct. 2231 (quoting 28 U.S.C. § 2072(b)); see Fed. R.Civ.P. 82 (stating that the Federal Rules of Civil Procedure “do not extend or limit the jurisdiction of the district courts”). “[A] class action is a procedural device.” 1 Newburg on Class Actions § 1:2. It “cannot confer standing to sue on a named plaintiff who seeks to represent a class[.]” Id.[11]
Here, the District Court, couching its decision in terms of the “fair, adequate, and reasonable” language of Rule 23(e), vacated its order granting preliminary approval of the settlement because the statutory basis for the plaintiffs’ claims had been eliminated. Instead, it should have dismissed both named plaintiffs’ complaints as moot since their injuries were based on the electronic printing of card expiration dates during the period for which the Clarification Act eliminated the corresponding statutory injury, 15 U.S.C. § 1681n(d). See Amchem Prods., Inc., 521 U.S. at 613,117 S.Ct. 2231.
Mootness is “the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of litigation (standing) must continue throughout its existence (mootness).” Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997) (internal quotation marks omitted); Artway v. Att’y Gen. of the State of N.J., 81 F.3d 1235, 1246 (3d Cir.1996) (“Mootness ... asks whether a party who has established standing has now lost it because the facts of her case have changed over time.”). Therefore, we look to the doctrine of standing to inform our application of the mootness doctrine. “In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a ‘case or controversy’ between himself and the defendant within the meaning of Art. III.” Worth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). “This is the threshold question in every federal case, determining the power of the court to entertain the suit.” Id. “Like any jurisdictional require *607 ment, standing cannot be waived.” Pub. Interest Research Group of N.J., Inc. v. Magnesium Elektron, Inc., 123 F.3d 111, 117 n. 5 (3d Cir.1997). In general, a plaintiff “must have standing at all stages of the litigation[.]” Id. at 117. “[FJederal appellate courts have a bedrock obligation to examine both their own subject matter jurisdiction and that of the district courts.” Id.[12] The Supreme Court has explained that “the irreducible constitutional minimum of standing contains three elements”:
First, the plaintiff must have suffered an “injury in fact” — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) “actual or imminent, not ‘conjectural’ or ‘hypothetical.]’ ” Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be “fairly ... trace[able] to the challenged action of the defendant, and not ... the result [of] the independent action of some third party not before the court.” Third, it must be “likely,” as opposed to merely “speculative,” that the injury will be “redressed by a favorable decision.”
Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal footnote and citations omitted). These elements are an “an indispensable part of [a] plaintiffs case[.]” Id. at 561, 112 S.Ct. 2130. In a class action, “named plaintiffs who represent a class ‘must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.’ ” Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 40 n. 20, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) (quoting Warth, 422 U.S. at 502, 95 S.Ct. 2197). “Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiffs claims, and they must be dismissed.” Berg v. Obama, 586 F.3d 234, 242 (3d Cir.2009) (internal quotation marks omitted). “[W]e are required to raise issues of standing sua sponte if such issues exist.” Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 405 (3d Cir.2005) (internal quotation marks omitted).
Here, an issue of mootness is presented. Prior to the final approval of the settlement, Congress eliminated the named plaintiffs’ injury-in-fact, see Pub.L. No. 110-241, the printing of the expiration date of their debit cards. By doing so, it eliminated the District Court’s jurisdiction over Ehrheart’s and Garland’s cases. Ehrheart’s complaint does not allege any personal injury besides the printing of the expiration date of her credit or debit card on a receipt on June 7, 2007. Her injury stemmed solely from 15 U.S.C. § 1681c(g), a statute “creating legal rights, the invasion of which create[d] standing[.]” Warth 422 U.S. at 500, 95 S.Ct. 2197 (internal quotation marks omitted). Once her injury-the invasion of her right not to have the expiration date of her credit or debit card printed on a receipt — was deemed a non-injury by Congress, her standing to seek relief in federal court was eliminated and her case was rendered moot. See id. As such, the District Court could not have held a fairness hearing, issued final approval of the settlement, or entered final judgment in Ehrheart’s case without violating Article III. Ironically, it is the District Court’s supervisory role as a fiduciary for the absent class members — a role the majority and Ehrheart trumpet in *608 their reasoning — that dooms her claim. Without the District Court’s final approval after a fairness hearing, and the entry of final judgment, the settlement was not complete. The District Court lost jurisdiction to issue final approval or enter final judgment when Ehrheart’s case was rendered moot.
Garland’s action should likewise be dismissed as moot. Although his complaint’s ambiguous allegation that Verizon injured him by “printing] more than the five digits of [his] credit ... or debit card number and/or print[ing] the expiration date of [his] credit or debit card,” leaves open the possibility that he has a cognizable injury-in-fact based on the printing of his account number, everything in this litigation points to his injury as being based solely on the printing of the expiration date of his credit or debit card. Indeed, the District Court, in its opinion and order granting Verizon’s motion for judgment on the pleadings, concluded that “[although Garland allege[d] in the alternative that [Verizon] printed more than the last five digits of his credit / debit card on his receipt ... the actual receipt which Garland attached to his Complaint reveal[ed] only the printing of his expiration date, and not the printing of more than the last five digits of his credit / debit card.” It reached this conclusion based on Verizon’s undisputed explanation of Garland’s injury in its memorandum in support of its motion for judgment on the pleadings. Moreover, Garland’s own arguments throughout this litigation have assumed that he has no claim due to the Clarification Act. For example, his memorandum in opposition to Verizon’s motion to vacate the District Court’s preliminary approval of the settlement agreement began by assuming that his claim was eliminated by the Clarification Act. It then argued that despite this shortcoming Garland was entitled to the fruits of the Settlement Agreement. His arguments in this appeal are a continuation of that untenable argument. Despite challenging the order granting Verizon’s motion for judgment on the pleadings in this appeal, Garland does not challenge the District Court’s conclusion regarding his injury.
Because the Article III standing requirements are “not mere pleading requirements but rather an indispensable part of the plaintiffs case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, ie., with the manner and degree of evidence required at the successive stages of the litigation.” Lujan, 504 U.S. at 561, 112 S.Ct. 2130. “At the pleading stage, general factual allegations of injury resulting from the defendant’s conduct may suffice,” id., but in light of the receipt attached to Garland’s complaint, his failure to refute the assertion that his only injury stemmed from the printing of his credit or debit card’s expiration date, his litigation strategy, and the District Court’s entry of judgment on the pleadings in favor of Verizon, I view his injury-in-fact as being limited to the printing of his credit or debit card’s expiration date. Therefore, I conclude that Garland’s claim, like Ehrheart’s claim, was rendered moot after the passage of the Clarification Act.
IV.
Although the District Court erred by cabining its analysis to the terms of Rule 23(e), its ultimate outcome and much of its underlying reasoning was correct. I would vacate the judgment on the pleadings in favor of Verizon and remand this ease with instructions for the District Court to dismiss both named plaintiffs’ complaints as moot. Because the majority permits this matter to proceed, despite the lack of a live “case or controversy” as *609 required under Article III, I respectfully dissent.

. All references to "Rule 23(e)” refer to Rule 23(e) of the Federal Rules of Civil Procedure. That provision states:
Settlement, Voluntary Dismissal, or Compromise. The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court’s approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.
(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.
(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.
(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.
(5) Any class member may object to the proposal if it requires court approval under this subdivision (e); the objection may be withdrawn only with the court's approval.
Fed.R.Civ.P. 23(e).

. The Fair Credit Reporting Act was "passed in 1970 to insure that consumer reporting agencies exercise their 'grave responsibilities’ regarding the 'assembling and evaluating [of] consumer credit and other information on consumers’ with ‘fairness, impartiality, and a respect for the consumer's right to privacy.’ 15 U.S.C. § 1681(a)(3) and (4).’’ Houghton v. Ins. Crime Prevention Inst., 795 F.2d 322, 323-24 (3d Cir.1986).

. "Final” was defined as:
(i) the date of final affirmance on an appeal of the Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Judgment; or (iii) if no appeal is filed, the expiration date of the time for the filing or noticing of any form of valid appeal from the Judgment.
Settlement Agreement 6 (¶ 1.10).

. "The Federal Rules of Civil Procedure are not enacted by Congress, but Congress participates in the rulemaking process.” Bus. Guides, Inc. v. Chromatic Commc’ns Enters., 498 U.S. 533, 552, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991) (internal quotation marks and citations omitted). “Congress has undoubted power to regulate the practice and procedure of federal courts,” Sibbach v. Wilson & Co., Inc., 312 U.S. 1, 9, 61 S.Ct. 422, 85 L.Ed. 479 (1941), so if it disagreed with a proposed rule promulgated by the Supreme Court, it could "vote to abrogate [that] rule,” In re Richards, 213 F.3d 773, 786 (3d Cir.2000).

. The Agreement was expressly made conditional by the parties, and if the District Court "fail[ed] to enter the Order of Final Approval, or fail[ed] to enter the Judgment, th[e] Agreement [would be rendered] void ab initio [.]” Settlement Agreement 16 (¶ 2.4.8). Furthermore, the Agreement contemplated the possibility that the settlement would not occur. In that event, the litigation would "proceed as if no party had ever agreed to such proposed settlement, without prejudice to the right of any party to continue to seek or to oppose class certification." Id. at 5.

. We have held that a preliminary approval order "establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.” In re GM Truck, 55 F.3d at 785.

. Those nine factors are: “(1) the complexity and duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings; (4) the risks of establishing liability; (5) the risks of establishing damages; *604 (6) the risks of maintaining a class action; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement in light of the best recovery; and (9) the range of reasonableness of the settlement in light of all the attendant risks of litigation.” In re GM Truck, 55 F.3d at 785.

. Notably, while we require an exacting and thorough review by a district court, we also grant substantial deference to that court's fact-finding. A district court's approval of a class action settlement is subject to abuse of discretion review by an appellate court. In re Cendant Corp. Litig., 264 F.3d 286, 293 (3d Cir.2001) (citing In re GM Truck, 55 F.3d at 782-83). Thus, the district court's findings need only survive review for clear error. In re GM Truck, 55 F.3d at 783.

. See Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges 12-16 (Federal Judicial Center 2005) (discussing other settlement terms that are “hot button indicators” that *605 "show their potential unfairness on their face”).

. Indeed, while recognizing the benefits of multi-factor tests for Rule 23(e) — such as, signaling to district courts that the inquiry is fact intensive and relies on discretion, and providing parties a roadmap for settlement, Jonathan R. Macey & Geoffrey P. Miller, Judicial Review of Class Action Settlements, 1 J. of Legal Analysis 167, 172 (2009) — some commentators have suggested that such tests suffer from a variety of deficiencies that result in “confusion and inconsistency in standards for review of class action settlements!.]” Id. at 202. Among other issues, the sheer number of factors to consider may encourage perfunctory analysis by district courts. Id. at 172. "Courts applying [a multifactor] test!] often recite the litany and engage in pro forma analyses, but their hearts are not in it.” Id. Also, the federal courts have yet to provide a uniform procedure for weighing the various factors implicated in a class action settlement:
Like all factor tests, the considerations do not always point in the same direction with the same force (if they did, the court could save time by looking at only one). A weighting is required. Should the courts assign equal weights to all the factors? The items are too diverse to make this plausible. But which factors should get more weight and which less? The courts of appeals don't provide much enlightenment. Some opinions indicate that the most important factor is the value of the settlement compared with what the class could expect from continued litigation. This may be interpreted as weighting one consideration over others, but it leaves open how much weight is demanded and how other factors should be assessed. This lack of clarity may be typical of factor tests but it is not an outcome that lends much predictability or certainty to the law.
Id. at 174.

. The majority, in its attempts to sustain a live "case or controversy,” argues that the District Court could still grant effective relief to the plaintiffs by virtue of the existence of the Settlement Agreement and the District Court’s ability to approve that agreement after a fairness hearing. This argument succinctly illustrates the errors of the majority’s approach. Rule 23, like all the Federal Rules of Civil Procedure, cannot "abridge, enlarge or modify any substantive right.” 28 U.S.C. § 2072(b). Nor can it "extend or limit the jurisdiction of the district courtsf.]” Fed. R.Civ.P. 82. Yet the majority seeks to use the procedures set forth in Rule 23 to accomplish both those things.
The majority’s approach would grant class members who do not opt out of the Settlement Agreement "substantive right[s]” that would be denied to class members who do opt out, in violation of the Rules Enabling Act. 28 U.S.C. § 2072(b). Under the majority’s holding, the former group may receive relief for a non-existent injury because the Settlement Agreement and the procedures set forth under Rule 23 purportedly provide for such a result. Class members who opt out, however, would have no right to relief. If an individual who opted out of the Settlement Agreement sought to proceed on her own claim, that claim would be dismissed because the Clarification Act eliminated her cause of action.
In the same vein, the majority asserts that this case is not moot because the District Court could hold a fairness hearing and grant relief — the approval of the Settlement Agreement — for the class members. Pointing to any Federal Rule of Civil Procedure, including Rule 23, as the source of Article III jurisdiction is categorically barred. Fed.R.Civ.P. 82. Rule 23's procedures cannot resuscitate a moot case. Id.

. The Supreme Court frowns upon a federal court "resolv[ing] contested questions of law when its jurisdiction is in doubt.” Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998); see Storino v. Borough of Point Pleasant Beach, 322 F.3d 293, 300 (3d Cir.2003) (explaining the importance of the standing doctrine).